**BURRUS, COOTES AND BURRUS et al., Appellants,**

v.

**Edwin R. MacKETHAN, Receiver of Norfolk Savings and Loan Corporation, Appellee.**

**No. 75–2130.**

United States Court of Appeals, Fourth Circuit.

Argued May 5, 1976.

Decided July 21, 1976.

Robert M. Hughes, III, and C. Michael Montgomery, Norfolk, Va. (Richard S. Harman, Jerrold G. Weinberg, Seawell, McCoy, Dalton, Hughes, Gore & Timms, Stackhouse, Weinberg & Stewart, Norfolk, Va., on brief), for appellants.

J. Vernon Patrick, Jr., Birmingham, Ala. (Barton S. Sacher, Berkowitz, Lefkovitz & Patrick, Birmingham, Ala., Oren R. Lewis, Jr., John E. Fricker, Lewis, Wilson, Cowles, Lewis & Jones, Ltd., Arlington, Va., on brief), for appellee.

Before RUSSELL, Circuit Judge, WIDENER, Circuit Judge, and WYZANSKI, Senior District Judge.*

WYZANSKI, Senior District Judge:

This is an appeal by defendants from a judgment in the United States District Court for the Eastern District of Virginia against them based upon a jury's verdict of $1,100,000 for plaintiff.

Plaintiff is the receiver of Norfolk Savings and Loan Corporation, organized as an Industrial Loan Corporation under the laws of Virginia. Defendants are Burrus, Cootes, and Burrus, a partnership engaged in the practice of certified public accounting, and individual partners in that firm.

For present purposes, it is only necessary to state that plaintiff complained that defendants, by alleged manipulative and deceptive practices in connection with certificates issued to depositors of Norfolk Savings and Loan Corporation, aided and abetted a violation of Rule 10b–5, 17 C.F.R. § 240.10b–5, promulgated by the Securities and Exchange Commission pursuant to § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b).

What constituted the principal gravamina of the 3-count complaint were plaintiff's allegations that when defendants, in the practice of their calling as certified public accountants, conducted examinations of Norfolk Savings and Loan Corporation, before it was placed in receivership with plaintiff as receiver, the defendants by their acts and omissions engaged in manipulative and deceptive, and, therefore, fraudulent practices which constituted violations of federal law. Allegations of violations of state law were added to the complaint upon the theory that there having been alleged causes of action colorably within the federal jurisdiction, causes of action under state law could be attached on the supposed basis of pendent jurisdiction.

By appropriate motions, beginning with pre-trial motions to dismiss and for summary judgment and including suitable motions at the end of plaintiff's case, after the taking of evidence had been concluded, and after the jury had returned its verdict, defendants contended that there had not been alleged, and there was never proven, a valid cause of action founded on any federal law or otherwise brought within the jurisdiction of the United States District Court.

Succinctly stated, the only question presented which requires our opinion is whether a certificate issued to a depositor of Norfolk Savings and Loan Corp. is a "security" within the meaning of § 3(a)(10) of the Securities and Exchange Act of 1934. 15 U.S.C. § 78c(a)(10). If it is not such a security, then, confessedly, there never was alleged a valid cause of action based on federal law and there never was jurisdiction in the District Court to hear any part of the complaint, not even the state causes of actions which were within federal jurisdiction only if pendent to a colorable federal cause of action.

Because the question presented is so narrow, our recital of the facts may be brief.

The obligor is the Norfolk Savings and Loan Corp., a corporation organized under Virginia law as an Industrial Loan Corporation. It is empowered by state law to issue in return for money deposited by a customer in a savings account in the Norfolk Savings and Loan Corp. a certificate representing the amount so deposited.

Such an instrument is denominated a "certificate of investment." However, despite its name, it is merely either a fully paid account or an installment account under the partial payment system authorized by Code of Virginia, 1950, as amended, Section 6.1–231. The latter type of account may be a regular passbook account, or a Christmas Club-type special account.

When the statute authorizing such a certificate was adopted, it was preceded by a "Report of the Commission to Study Matters Relating to Industrial Loan Associations," H.Doc.No.3, Reg.Sess. 1960, which stated that:

* Sitting by designation.

"A fully paid certificate of investment is similar to a certificate of deposit issued by a bank. Under the installment or partial payment system, the customer opens an account with a relatively small payment and is issued a card or booklet, similar to a passbook issued to depositors by banks. The account bears interest and has the characteristics of a savings deposit in a bank."

Such a certificate embodies a contract by the corporation to pay interest at a fixed rate, unrelated to the profits of the corporation. It creates solely a debtor-creditor relationship. It does not represent any share in the capital of the corporation. Code of Virginia, 1950, as amended, Section 13.1–2. It neither confers nor embodies voting rights. To use the older terminology, it embodies a right *in personam* against the corporation, and not a right *in rem.*

■ In both form and substance it is essentially an evidence of indebtedness, and only in that sense is it a promise to pay. Its fundamental character is *ejusdem generis* as, and not distinguishable in any significant way from, a pass-book issued by a savings bank, and it is hardly arguable that savings bank account books are securities rather than the equivalent of currency. *Philpott v. Essex County Welfare Board,* 409 U.S. 413, 416, 93 S.Ct. 590–592, 34 L.Ed.2d 608 (1973); *Porter v. Aetna Casualty and Surety Co.,* 370 U.S. 159, 161–162, 82 S.Ct. 1231–1233, 8 L.Ed.2d 407 (1962).

The precise issue before us is whether an instrument with the aforesaid characteristics issued by a savings and loan corporation as the indicium of money deposited in the corporation is a "security" within the meaning of § 3(a)(10) of the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)(10) which gives the following definition:

"The term 'security' means any note, stock, treasury stock, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit, for a security, or in general any instrument commonly known as a 'security'; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the of which is likewise limited."

In a case cognate to the one at bar, *Bellah v. First National Bank,* 495 F.2d 1109 (5th Cir. 1974), the Court of Appeals held that (absent unusual circumstances which might be found by a trial court in a subsequent trial to impose liability) (See *Bellah,* at p. 1115) a certificate of deposit issued by a national bank has merely a commercial nature and is not of such an investment nature as to constitute a "security" within the meaning of § 3(a)(10) of the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)(10). The kernel of Circuit Judge Gewin's opinion, at p. 1114, follows:

■ Section 78c(a)(10) of the Securities Exchange Act of 1934 includes as a security a "certificate of deposit, for a security." Under the judicial gloss placed on this language, a certificate of deposit issued in exchange for currency is not encompassed within the section because currency is not a security. *Superintendent of Insurance of State of New York v. Banker's Life & Casualty Co.,* 300 F.Supp. 1083, 1099 (S.D.N.Y.1969), aff'd, 430 F.2d 355 (2d Cir. 1970), rev'd on other grounds, 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971); *SEC v. Fifth Avenue Coach Lines, Inc.,* 289 F.Supp. 3, 31 (S.D.N.Y. 1968) aff'd on other grounds, 435 F.2d 510 (2d Cir. 1970). To the extent that the Bellahs rely on a contrary proposition, their argument is thus unavailing.

We regard the foregoing opinion and the cases there cited as sound, and as requiring us to reverse the judgment in the case at

bar. *Ex majore cautela,* however, we add further reasons for our conclusion.

Section 3(a)(10) in referring to a "certificate of deposit, for a security" has a negative pregnant: impliedly it excludes a certificate of deposit issued for currency or payable in currency.

A certificate of deposit is far more like commercial paper than any other obligation. Not only is it payable in dollars according to its terms either on demand or at a fixed future date, but what the payee receives is principal and interest at a stipulated rate. In no aspect is the obligation keyed to the profitability of the obligor's enterprise or to his skill.

Were a certificate of deposit to be treated as a security there would be superimposed upon an already existing pattern of federal or state banking or like regulations which govern banks, trust companies, savings and loan associations, and other institutions for deposit of currency, a further, and perhaps not wholly suitable, pattern of regulations by the SEC. There is no indication in the text of the statute, nor in a Congressional committee report, nor even in a legislator's speech on the floor that Congress intended to provide for an overlap with all its risks of inter-agency conflict and of the SEC's want of specialized relevant expertise in this particular field of banking. What *Tcherepnin v. Knight,* 389 U.S. 332, 340–341, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967), quotes from what was said to Congress by a representative of savings and loan associations relates not to certificates of deposit as such, but more likely to shares sold by such associations, and those are of a wholly different nature, being keyed to profits and involving, usually, shareholder participation in the enterprise.

Nor do we find particularly relevant to the instant case the holding, the dicta, or in, to use a word Justice Holmes cherished, the "afflatus" of *Tcherepnin.* There it was held that the anti-fraud provisions of the 1933 and 1934 acts administered by the SEC applied to that type of certificate issued by a savings and loan association under which the holder was not a creditor but a shareholder, where his return was not on the basis of a contract to pay a fixed rate of interest but a share of the profits, where the right of the holder to make voluntary withdrawals was restricted, and where the instrument could be transferred by written assignment accompanied by delivery of the certificate. We regard as obvious a distinction between the type of instrument involved in *Tcherepnin* and the certificate of deposit which is before us: one is a share, and the other is a banker's obligation to pay a debt.

*United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975) is not addressed to the precise problem we face. Nonetheless, each party to this litigation finds some comfort in phrases taken from the opinion in *United Housing.* However, we regard the issues there as so unlike the ones before us that we see no advantage in either stopping here to analyze that case nor culling from it brocards or glittering generalities.

■ We prefer to let our judgment be guided by our strong feeling that the 1933 and 1934 statutes administered by the SEC were not intended to reach instruments evidencing ordinary banking and like accounts, no matter how alluringly, pervasively, competitively, and (as plaintiff asserts in the case at bar) deceptively the banking company, or its near equivalent the savings and loan corporation, sought to attract such accounts, even to the point of flattering depositors by calling them "investors" in "certificates of investment" instead of what they truly were, certified holders of bank deposits.

■ Inasmuch as an ordinary certificate of deposit of a banking and loan corporation is merely an instrument which constitutes evidence of principal and interest payable because of currency deposited in an account (no matter if the "rose" is given another name), it is not a "security" but is more like a form of "currency" and so is excluded from the 1934 securities legislation administered by the SEC. Section 3(a)(10) of the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)(10).

Having concluded that the certificates in issue were not securities, we reverse the judgment and direct that a judgment for defendant be entered by the District Court.

*So ordered.*