**William M. REID, Individually and derivatively on behalf of Weatherby Engineering Co., Plaintiffs-Appellants,**

v.

**H. D. HUGHES et al.,
Defendants-Appellees.**

No. 76–3673.

United States Court of Appeals,
Fifth Circuit.

Aug. 21, 1978.

Ben H. Schleider, Jr., Paul S. Francis, Houston, Tex., for plaintiffs-appellants.

Barry Allan Brown, Houston, Tex., for Johnson-Loggins, Inc.

John L. Carter, Houston, Tex., for R. E. Reamer.

J. Clifford Gunter, III, Houston, Tex., for G. W. Loggins.

Justin M. Campbell, III, Houston, Tex., D. Robert Owen, New York City, for First Realty Investment.

Lloyd R. Cunningham, Jr., Grant Cook, Houston, Tex., for Larry Johnson.

Morton L. Susman, Michael P. Kessler, Houston, Tex., for Hilderbrand, Hughes et al.

Before TUTTLE, GEE and FAY, Circuit Judges.

FAY, Circuit Judge:

This appeal raises a variety of difficult questions under the Securities Exchange Act of 1934. Suing individually and derivatively, William M. Reid charged the defendants with a multitude of sins including violations of Section 10(b) and Rule 10b–5 of the 1934 Act.[1] The district court granted the defendants' motion to dismiss for failure to state a claim upon which relief can be granted.[2] The basis of the district court's order was evidently a determination that the plaintiff had failed to allege in his complaint that either he or the company on whose behalf he brought the derivative suit had bought or sold securities. It is axiomatic that the purchase or sale of securities by a plaintiff is a jurisdictional prerequisite to the maintenance of a claim for damages under Section 10(b) and Rule 10b–5, *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), and the failure to allege such requires a dismissal of the action as a matter of law. After a careful examination of the plaintiff's complaint and the relevant case law, we affirm.

The facts in this case are complex and, unfortunately, have not been fully devel-

---

1. Section 10 of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, provides in relevant part:

 It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

 (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

 Rule 10b–5, 17 CFR § 240.10b–5, provides: Employment of manipulative and deceptive devices.

 It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange

 (a) To employ any device, scheme, or artifice to defraud.

 (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

 (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

 Of the five counts in the plaintiff's complaint only one alleges a federal cause of action. The other four allege various causes of action under Texas law. A federal court may assume jurisdiction of these claims under the principles of pendent jurisdiction. However, once a district court dismisses all those claims which provide for original federal jurisdiction, it is then within the district court's discretion to dismiss the accompanying state claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). There is nothing in the record before us which would indicate that the district court in this case abused its discretion by dismissing the state court claims.

2. The defendants contend that we should treat the action by the district court as a grant of a motion for summary judgment. We disagree. The defendants had filed with the district court a joint motion to dismiss or, in the alternative, for summary judgment. In its order granting the defendants motion, the district court stated:

 [I]t appearing to the Court that the Complaint does not set forth a claim upon which relief may be granted, it is, therefore, ORDERED that the Motion be and it is hereby sustained and the Plaintiff's Complaint is dismissed.

 App. 106. Nothing in the record before us prompts us to think that the judge took into consideration matters outside of the pleadings when making his decision. The mere fact that the defendants included such matters in their memoranda to the court in support of their motion does not mean that the court in fact considered this material in any way when making its decision.

oped. The plaintiff owns 9.5% of the stock in Weatherby Engineering Co. The remainder of Weatherby stock is owned by defendant IDSO Investments, Inc. (80%), defendant K. G. Watler (9.5%), and Leon B. Dorsey (1%). According to the plaintiff, Weatherby was dominated by defendant H. D. Hughes through IDSO—a family holding company.

The actions complained of by the plaintiff revolve around the acquisition of all the outstanding stock of Johnson-Loggins, Inc. (JLI) from its parent corporation First Realty Investment Corporation (FRI). Z Corporation was the ultimate recipient of this stock. According to the plaintiff's complaint, JLI owned substantial amounts of real estate which had been purchased at highly inflated prices and on onerous terms. To be relieved of the cash drain created by the JLI real estate indebtedness, FRI offered to sell the JLI stock to defendants Larry Johnson, Glenn Loggins, and R. E. Reamer for $4,000,000 in cash and promissory notes and 547,214 shares of FRI. In order to finance this acquisition of JLI stock, Johnson, Loggins, and Reamer approached Hughes, Watler, and Herbert V. Hildebrand (all of whom were officers and directors of Weatherby), and worked out an arrangement whereby the cash and assets of Weatherby were committed to finance the purchase of JLI stock from FRI. Exactly how this was done is not clear from the plaintiff's complaint. It is not contested, however, that it was Z Corporation, and not Weatherby, who received the JLI stock.

Some background information on Z Corporation is essential to a complete understanding of the facts of this case. The allegations set forth that Z Corporation was chartered on November 18, 1974, and its initial directors were Hughes, Watler, Hildebrand, Loggins and Reamer. IDSO, Watler, and Dorsey transferred their Weatherby stock to Z Corporation in exchange for 60% of the stock of Z Corporation. Z Corporation also issued stock to Johnson, Loggins, and Reamer. The crux of the plaintiff's complaint is that as of November 30, 1974, Weatherby had assets totalling $13,700,216 of which $6,572,734

was in cash, but that the defendants caused Weatherby to issue promissory notes, transfer cash and pledge certificates of deposits totalling $4,000,000 in order to enable Z Corporation to purchase the stock of JLI. It is alleged that all this was done without consideration or for insufficient consideration to Weatherby.

 We have carefully examined the allegations of the plaintiff's complaint, and agree with the district court that the plaintiff, on the face of his complaint, nowhere alleges that either he or Weatherby bought or sold securities. We reach this conclusion fully aware of the fact that a complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, and that both the trial court and this court must accept as true all material allegations in the complaint and must construe the complaint in favor of the plaintiff. A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. See *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). It is, however, also true that when federal jurisdiction is based on the existence of a federal question, the jurisdictional allegation must state under which particular statute the action arises, and the body of the complaint must set forth facts showing that the case does in fact arise under federal law. A general allegation of a federal question will not suffice if it is not supported by matters constituting the claim for relief as set forth in the complaint. See *Givens v. Moll*, 177 F.2d 765 (5th Cir. 1950); C. Wright, Law of Federal Courts, 327 (3d ed. 1976).

The plaintiff argues that the body of his complaint sufficiently alleges that Weatherby both bought and sold securities. Initially, plaintiff argues that paragraph 22 of his complaint alleges that Weatherby was a seller of securities. Paragraph 22 provides:

> As of November 30, 1974, Weatherby had assets totalling $13,700,216 of which $6,572,734 was in cash. Defendants

caused Weatherby to issue promissory notes, transfer cash and pledge certificates of deposit totalling $4,000,000 in order to enable Z Corporation to purchase the stock of Johnson-Loggins from FRI without consideration or for insufficient consideration to Weatherby.

The plaintiff contends that Weatherby, by pledging certificates of deposit and by giving promissory notes, was itself a seller of securities within the meaning of the Securities and Exchange Act of 1934. We disagree. While it may be true that in certain situations a certificate of deposit can be a security as that term is used in the Act, there is absolutely no support for the proposition that a mere *pledge* of a security in circumstances such as those alleged would constitute a purchase or sale thereof within the meaning of Section 10(b) and Rule 10b–5. *See McClure v. First National Bank of Lubbock, Texas*, 497 F.2d 490, 495 (5th Cir. 1974). The issuance of promissory notes provides a somewhat different question. The Securities and Exchange Act of 1934 provides that the term security means "any" note, but judicial decisions have restricted the application of the 1934 Act to only those notes that are investment in nature. Notes which are reflective of individual commercial transactions are generally outside of the purview of the Act. In *McClure v. First National Bank of Lubbock, Texas*, 497 F.2d 490 (5th Cir. 1974),

this Court explained that notes which can be deemed securities usually fall within one of two categories. The first category is those notes which are offered to a class of investors or are acquired for speculation or investment purposes. The second category is when the maker of the note receives investment assets in return for the note. It is impossible to tell from the face of the complaint whether the notes issued by Weatherby fall into either of these two categories.[3] It is certain, however, that the mere allegation by the plaintiff in his complaint that Weatherby issued promissory notes is grossly insufficient to establish the jurisdictional basis for his cause of action since, standing alone, it in no way alleges that Weatherby was a seller of securities.

The plaintiff also argues that Weatherby was a buyer of securities.[4] The thrust of this argument is that the cash and resources of Weatherby were used to finance the acquisition of JLI stock from FRI. Because of its vital role in these transactions, it is contended that Weatherby effectively bought the JLI stock from FRI on behalf of Johnson, Loggins, Reamer, Hughes, Watler, IDSO and Z Corporation, and made it possible for them to now own Z Corporation stock. The plaintiff argues that the fact Weatherby does not have legal title to the JLI stock is a formal consideration which should not be control-

**3.** From what we can ascertain from the record, it does appear to us that the promissory notes issued by Weatherby would not be the type notes which would be considered "investment in nature." The promissory notes were issued by Weatherby to FRI so that Z Corporation could acquire the JLI stock. It does not appear that this sort of transaction would fall into either of the two categories outlined in *McClure*. The promissory notes were not offered to a class of investors or acquired for speculation purposes. Rather, the allegations of the complaint indicate these notes were simply taken by FRI in partial payment for the JLI stock. Nor can the plaintiff argue that Weatherby, the maker of the notes, received investment assets in return for the notes. The whole theme of the plaintiff's complaint is that Weatherby received nothing in return for the use of its assets.

**4.** On appeal, plaintiff argues that he should be considered a seller of securities under the

"forced seller" doctrine. The plaintiff argues that Weatherby has exercised its right to purchase his stock under a buy-sell provision. The problem with this argument by the plaintiff is that the plaintiff never alleged it in his complaint. In paragraph 17 of his complaint, plaintiff states that he continued to own his stock in Weatherby, and in paragraph 23(m) the plaintiff states that the "defendants have treated Reid's stock in Weatherby as being subject to an option to purchase and *have threatened* to purchase such stock at less than fair value." If in fact Weatherby has exercised its option on the plaintiff's stock, the proper course for the plaintiff to have followed would have been to move the district court for permission to amend the complaint. The plaintiff never made such a motion, and our review must necessarily be limited to the allegation on the face of the complaint.

ling. In support of this argument, the plaintiff refers us to a portion of the opinion in *Smallwood v. Pearl Brewing Co.*, 489 F.2d 579 (5th Cir. 1974), which provides:

> Pearl and Southdown entered into a contract whereby on the effective date of the merger all of Pearl's assets were transferred to Southdown in return for Southdown preferred stock issued to Pearl's shareholders. Pearl was the contracting party and provided the consideration. In effect, Pearl bought the Southdown stock for its owners, the Pearl shareholders. Although not an active conduit or the ultimate recipient of the Southdown preferred stock, Pearl acted as a "purchaser" in all other respects. Little purpose would be served by hinging Smallwood's standing to sue derivatively under Rule 10b–5 entirely on the failure of Pearl to have physical possession of the shares, and we decline to do so.

*Id.* at 592.

It is unnecessary for us to currently decide whether it is possible for a party to be considered a purchaser of securities in circumstances such as alleged here even though that party never took legal title to those securities. The scope of our inquiry is limited to the allegations on the face of the plaintiff's complaint, and the complaint does not allege such a theory and in fact negates any inference that Weatherby was the purchaser of the JLI stock. Paragraph 22 of the complaint states flatly that the defendants caused Weatherby to issue promissory notes, transfer cash and pledge certificates of deposits "in order to enable Z Corporation to purchase the stock of Johnson-Loggins from FRI. . . ." Nowhere in the plaintiff's complaint does he allege that Weatherby purchased the JLI stock, either directly or indirectly through a conduit. Such an allegation was necessary in order to establish the jurisdictional requirement, and its absence justified the district court's dismissal of the cause of action.[5]

In affirming the district court's dismissal, we are of course in no way rendering an opinion on the merits of the plaintiff's claim. From the record before us, it appears that the plaintiff has set forth a legally sufficient corporate mismanagement case against the defendants. This type of cause of action, however, is of the type traditionally assigned to state courts since:

> "Corporations are creatures of state law, and investors commit their funds to corporate directors on the understanding that, except where federal law expressly requires certain responsibilities of directors with respect to stockholders, state law will govern the internal affairs of the corporation."

*Santa Fe Industries v. Green*, 430 U.S. 462, 479, 97 S.Ct. 1292, 1304, 51 L.Ed.2d 480 (1977), *quoting Cort v. Ash*, 422 U.S. 66, 84, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975).

Since the plaintiff's complaint does not set forth a cause of action under Section 10(b) and Rule 10b–5, the district court's dismissal of the case is affirmed.

AFFIRMED.

---

5. We in no way wish to imply that, even if properly alleged, Weatherby would necessarily be considered a purchaser of securities. The facts as alleged in this case are readily distinguishable from those in *Pearl*. In *Pearl*, all of the assets of Pearl Brewing Co. were transferred to a surviving corporation as part of a culmination of a merger agreement. Pearl Brewing Co. was an active participant in the transaction, and was in fact a contracting party. The gist of the plaintiff's complaint in this case, however, appears to be that the defendants mishandled and in fact raided the assets of Weatherby. It is charged that the defendants then used these "illegally" acquired assets to enable Z Corporation to purchase stock. The participation of Weatherby in all of this is quite different from that of Pearl Brewing Co., and thus we are in no way implying that Weatherby should be considered a purchaser under the language of *Pearl*.