Roger F. HENDRICKSON and George A. Carter, as Joint Official Liquidators of International Bank and Trust Limited, Bahamas Savings and Loan Association (Nassau) Limited, Bahamas Savings and Loan Association Limited, and International Bank and Trust (Nassau) Limited, all Bahamian corporations, Plaintiffs,

v.

Albert J. BUCHBINDER, Alan Chesler, John Walker, Sherwyn Finchell, and George R. Davis, Defendants.

No. 76–619–CIV–JAG.

United States District Court, S. D. Florida, Civil Division.

Feb. 28, 1979.

Helliwell Melrose & De Wolf, Miami, Fla., for plaintiffs.

Gilbride & Heller, P. A., Miami, Fla., for defendant George R. Davis.

## ORDER OF DISMISSAL

GONZALEZ, District Judge.

THIS SUIT was filed by Roger Hendrickson and George Carter as Official Liquidators of four Bahamian business entities referred to as the "I.B.T. Group."[1] It is alleged that the I.B.T. Group was forced into bankruptcy by various acts of mismanagement of the directors and fiduciaries thereof. One defendant, George Davis, has filed a motion to dismiss attacking the jurisdiction of this Court over the claims asserted.

The five count Complaint asserts various claims predicated upon fraudulent conveyances of corporate assets by the defendants for their personal use and benefit.

The Plaintiff attempts to invoke this Court's jurisdiction pursuant to 15 U.S.C. § 78aa by alleging a Rule 10b–5 securities fraud. 15 U.S.C. § 78j(b).

The defendant argues that the complaint fails to allege a "purchase" or "sale" of a "security". *See, National Bank of Commerce of Dallas v. All American Assurance*

---

1. The "I.B.T. Group" is composed of International Bank & Trust, LTD. (IBT), Bahama Savings & Loan Association (BSLA), International Bank & Trust of Nassau (IBTN), and Bahama Savings and Loan Association of Nassau (BSLAN). It is alleged that IBT owns 100% of the stock of BSLA, who, in turn, owns 100% of the stock of both IBTN and BSLAN.

*Company,* 583 F.2d 1295 (5th Cir. 1978); *Reid v. Hughes,* 578 F.2d 634 (5th Cir. 1978); *Hilgeman v. National Insurance Company of America,* 547 F.2d 298 (5th Cir. 1977); *See also, Amfac Mortgage Corporation v. Arizona Mall of Tempre, Inc.,* 583 F.2d 426 (9th Cir. 1978).

This Court agrees.

Plaintiffs allege that the passbook/certificates of deposit issued by the banking entities of the I.B.T. Group are "securities" within the meaning of § 3(a) of the Securities and Exchange Act of 1934. Relying upon *Garner v. Pearson,* 374 F.Supp. 591 (M.D.Fla.1974), plaintiffs further allege that the acts of corporate mismanagement so reduced the value of the alleged securities as to constitute a "forced sale" thereof. *Smallwood v. Pearl Brewing Company,* 489 F.2d 579 (5th Cir. 1974); *Dudley v. Southeastern Factor and Finance Corporation,* 446 F.2d 303 (5th Cir. 1971); *Coffee v. Permian Corporation,* 434 F.2d 383 (5th Cir. 1970); and *Herpich v. Wallace,* 430 F.2d 792 (5th Cir. 1970); *see also, Vine v. Beneficial Finance Company,* 374 F.2d 627 (2nd Cir. 1967).

This Court must initially determine whether the passbook/certificates of deposit issued by the I.B.T. group constituted securities. Only upon determining that they do constitute securities will it become necessary to consider whether there has been a purchase or sale; and whether the complaint on its face pleads facts showing that the action is barred by the applicable statute of limitations.

*SECURITIES?*

█ The test for determining whether a particular instrument is a security involves three elements. There must be (1) an investment in a common venture; (2) premised upon a reasonable expectation of profits (3) to be derived from the entrepreneurial or managerial efforts of others. *United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 852, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975); and, *S.E.C. v. W.J. Howey Company,* 328 U.S. 293, 301, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946).

██ It is true that for purposes of a motion to dismiss for lack of jurisdiction the Court must take the well pleaded allegations of the complaint as true. *Spector v. L.Q. Motor Inns, Inc.,* 517 F.2d 278, 281 (5th Cir. 1975) *cert. denied* 423 U.S. 1055, 96 S.Ct. 786, 46 L.Ed.2d 644 (1976). It is also true, however, that when federal jurisdiction is based upon the existence of a federal question "[t]he body of the complaint must set forth *facts* showing that the case does, in fact, arise under federal law." *Reid v. Hughes,* 578 F.2d 634 (5th Cir. 1978).

The Second Amended Complaint filed in this cause states only that the passbooks represent time and demand deposits for which the depositor is entitled to a return based upon the prevailing interest rate. The complaint essentially describes a certificate of deposit, as defined by F.S. 673.3–104, the Florida enactment of the Uniform Commercial Code dealing with commercial paper.

The complaint fails to allege that the depositor's return will be predicated upon the managerial efforts of the banks directors. The complaint similarly fails to state that the return to depositors is tied to an apportionment of profits. On the contrary, the complaint merely states that the bank issues passbooks which are payable on demand or at a date certain with accrued interest.

█ The Supreme Court, in *United Housing Foundation v. Forman, supra,* in holding that shares issued to resident property owners in a co-operative apartment building were not securities, noted that an indispensible element of a security is that it entitles the holder to receive dividends contingent upon an apportionment of profits, *id.* 421 U.S. at 837, 95 S.Ct. 2051. As the Court stated, "What distinguishes a security transaction—and what is absent here—is an investment where one parts with his money in the hope of receiving profits [solely] from the efforts of others." *id.* at 858, 95 S.Ct. at 2063.

The plaintiffs at bar can expect nothing other than the amount of money they de-

posited with accrued interest at a contracted rate. The plaintiffs are entitled to a sum contracted rate. The plaintiffs are entitled to a sum certain on a date certain notwithstanding the "entrepreneurial or managerial efforts of others."

This Court is persuaded that the decisions of *Bellah v. First National Bank*, 495 F.2d 1109 (5th Cir. 1974) and *Burrus, Cootes and Burrus v. MacKethan*, 537 F.2d 1262 (4th Cir. 1976) *cert. den.* 434 U.S. 826, 98 S.Ct. 103, 54 L.Ed.2d 85 (1977) are dispositive of the issue presented here.

In *Bellah v. First National Bank*, the plaintiffs attempted to invoke federal jurisdiction by alleging fraud in connection with the purchase or sale of a security. The plaintiffs alleged that the "security" requirement was satisfied by either (1) the promissory note and deed of trust executed by the plaintiff-borrowers, *or* (2) a certificate of deposit which was issued by the defendant-bank. The trial court dismissed. The Fifth Circuit affirmed finding that a certificate of deposit issued in exchange for cash does not constitute a "security" within the purview of the Securities Act.

As Judge Gewin stated, "Section 78c(a)(10) of the Securities and Exchange Act of 1934 includes as a security a 'certificate of deposit for a security'. Under the judicial gloss placed on this language, a certificate of deposit issued in exchange for currency is not encompassed within the section because currency is not a security. *Superintendent of Insurance of State of New York v. Banker's Life & Casualty Co.*, 300 F.Supp. 1083, 1099 (S.D.N.Y.1969), aff'd, 430 F.2d 355 (2d Cir. 1970), rev'd on other grounds, 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971); *SEC v. Fifth Avenue Coach Lines, Inc.*, 289 F.Supp. 3, 31 (S.D.N.Y.1968) aff'd on other grounds, 435 F.2d 510 (2d Cir. 1970)." *id.* at 1114.

The Fourth Circuit in *Burrus, Cootes and Burrus v. MacKethan, supra*, also addressed the issue of "whether a certificate issued to a depositor of Norfolk Savings and Loan Corp. is a 'security' within the meaning of § 3(a)(10) of the Securities and Exchange Act of 1934. 15 U.S.C. § 78c(a)(10)" *id.* at 1263.

The passbooks involved in *Burrus* obligated the bank "to pay interest at a fixed rate, unrelated to the profits of the corporation". *id.* at 1264.

■ As the Court recognized, the issuance of a certificate of deposit in exchange for currency "creat[ed] solely a debtor-creditor relationship." *id.*

The Court continued by explaining:

"In both form and substance it is essentially an evidence of indebtedness, and only in that sense is it a promise to pay. Its fundamental character is ejusdem generis as, and not distinguishable in any significant way from, a pass-book issued by a savings bank, and it is hardly arguable that savings bank account books are securities rather than the equivalent of currency. *Philpott v. Essex County Welfare Board*, 409 U.S. 413, 416, 93 S.Ct. 590–592, 34 L.Ed.2d 608 (1973); *Porter v. Aetna Casualty and Surety Co.*, 370 U.S. 159, 161–162, 82 S.Ct. 1231–1233, 8 L.Ed.2d 407 (1962)."

Finally, the Court notes that the American Law Institute's tentative draft for a Federal Securities Code, Tentative Draft No. 6, April 1, 1977 provides, in part:

Sec. 297(b) [Exclusions] "Security does not include (1) currency, (2) check (whether or not certified) draft, bill of exchange, or bank letter of credit, (3) a note or other evidence of indebtedness issued in a mercantile or consumer transaction not involving a distribution, (4) an interest in a deposit account with a bank or a savings and loan association, (5) a bank certificate of deposit that ranks on a parity with an interest in a deposit account with the bank   .   .   ."

The only instance found in which anything resembling a "certificate of deposit" was held to be a security was in the Supreme Court decision of *Tcherepnin v. Knight*, 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967). There the Supreme Court addressed the "narrow question" of whether a "withdrawable capital share in an Illinois savings and loan association is a

'security' within the meaning of the Securities Exchange Act of 1934," *id.* Illinois law ties the payment of dividends on withdrawable capital shares to an apportionment of profits, hence those petitioners could expect a return on their investment only if City Savings made a profit. *id.* at 338, 88 S.Ct. 548. Based upon this finding, the court held that the capital share did constitute a security.

■ This Court concludes, therefore, that based upon the allegations of the complaint, federal jurisdiction is lacking and this cause must be dismissed. *Reid v. Hughes, supra.*

The Court does not have to decide whether the "forced seller" theory should—or can be extended beyond a short-form merger situation so as to apply to the case at bar. The Court does note, however, that even if the passbook were a security, which it is not, and the acts of corporate mismanagement did constitute a sale, which this Court doubts, the transaction would be barred by the statute of limitations.

■ Where the statute of limitations appears on the face of the complaint, the complaint fails to state a claim for which relief can be granted and dismissal pursuant to Rule 12(b)(6), Fed.R.Civ.P. is proper. *Mann v. Adams Realty Company*, 556 F.2d 288 (5th Cir. 1977). The Statute of Limitations for a Rule 10b–5 claim is two years. *Nortek v. Alexander Grant*, 532 F.2d 1013 (5th Cir. 1976) and *Hudak v. Economic Research Analysis*, 499 F.2d 996 (5th Cir. 1974). The last act of corporate mismanagement which caused the passbooks to become worthless, and hence sold, was in 1972. This suit was filed in 1976.

Since the Court lacks Rule 10b–5 jurisdiction, and the complaint fails to properly assert 28 U.S.C. § 1332 diversity jurisdiction, *Mas v. Perry*, 489 F.2d 1396 (5 Cir. 1974), it is

ORDERED AND ADJUDGED that this cause stands DISMISSED for failure to allege federal jurisdiction. Plaintiffs will be granted ten (10) days leave to file a Third Amended Complaint.