615 F.2d 465
 Fed. Sec. L. Rep. P 97,294
CANADIAN IMPERIAL BANK OF COMMERCE TRUST COMPANY (Bahamas)
Limited as Successor Trustee under Trusts 1
through 40 of Deed of Settlement for
1740 Trusts, Plaintiff-Appellant,
v.
E. R. FINGLAND et al., Defendants-Appellees.
 No. 79-1477.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 14, 1980.
Decided Feb. 22, 1980.
 
 Lionel G. Gross, Altheimer & Gray, Chicago, Ill., for plaintiff-appellant.
 James C. Munson, Kirkland & Ellis, Sheldon Karon, Karon, Morrison & Savikas, Chicago, Ill., for defendants-appellees.
 Before CASTLE, Senior Circuit Judge, and PELL and SPRECHER, Circuit Judges.
 SPRECHER, Circuit Judge.
 
 
 1
 Plaintiff appeals from the lower court's dismissal of its complaint for lack of subject matter jurisdiction. We affirm the dismissal and determine that the complaint did not allege sufficient facts to conclude that a certificate of deposit of a Bahamian banking and trust entity was a security under the Securities Exchange Act of 1934.
 
 
 2
 * The plaintiff, the current trustee of several trusts, brought this action against several former directors of the previous trustee, Mercantile Bank and Trust Company; Mercantile's controlling corporate shareholder; and Mercantile's alleged former auditing firm, Price Waterhouse & Co. Mercantile was a Bahamian bank and trust company which acted as trustee for the trusts from June 3, 1971 to May 8, 1977. During that time, pursuant to its mandate to invest money for the benefit of the trusts, the bank purchased with trust assets its own certificates of deposit. Shortly thereafter, Mercantile's license to do business was suspended and it was placed in control of a Permanent Liquidator by Bahamian authorities, causing losses by the trust beneficiaries. The plaintiff charged that the bank's purchase of its own certificates of deposit constituted a violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a-78hh, and Rule 10b-5, 17 C.F.R. § 240.10b-5, and gave rise to common law claims of fraud, breach of fiduciary duty, and negligent misrepresentation.[1]
 
 
 3
 Defendant Price Waterhouse & Co. moved to dismiss the complaint for lack of federal jurisdiction under the Securities Exchange Act because "(a) there are no 'securities' in the transactions complained of; and (b) the conduct complained of is predominantly foreign and has an insufficient nexus with the United States."[2] Without specifying whether its action was based upon one or both of the asserted grounds, the district court granted the motion and dismissed the complaint. The plaintiff has appealed. Because federal question jurisdiction depends upon the existence of a "security" and because we find that none was properly alleged, we affirm.
 
 II
 
 4
 Unlike most complaints relying on the presence of a security, plaintiff's complaint in this case neither incorporates nor attaches a copy of the instrument or document relied upon to sustain jurisdiction. Although not all securities must be evidenced by written documents, the provision of the Securities Exchange Act of 1934 which defines "security" lists a catalogue of what are ordinarily written documents. See 15 U.S.C. § 78c(a)(10).[3] The word "certificate" particularly implies the existence of a writing,[4] and the ordinary definition of a "certificate of deposit" is
 
 
 5
 A written acknowledgment by a bank or banker of a deposit with promise to pay to depositor, to his order, or to some other person or to his order.
 
 
 6
 Black's Law Dictionary (Rev. 4th ed. 1968). Nevertheless, as we stated above, a writing is not mandatory and its absence is not fatal.[5]
 
 
 7
 In this case, however, we are not advised by the complaint whether the particular certificates of deposit are nonexistent and therefore were represented by wholly oral arrangements, or whether written certificates do exist but have been withheld from the plaintiff by Mercantile or by its Permanent Liquidator.
 
 
 8
 The absence of a physical document presents difficulties for the plaintiff because it must nonetheless prove the existence of subject matter jurisdiction based on the existence of a written or oral security not available for examination by the court. Although the complaint is relatively lengthy, it deals primarily with the nature of the conspiracy alleged to exist among the defendants and with the misrepresentations or nondisclosures of the conspirators. Virtually the only allegations purporting to describe the certificates of deposit are the following:
 
 
 9
 34. In fact, through the period indicated, contrary to its representations as to the investments it would make of trust funds, Mercantile Bank from time to time invested trust funds in excess of $500,000.00 in its own certificates of deposit. On information and belief, plaintiff states that none said (sic) certificates of deposit were guaranteed by INTERNATIONAL BANK. Plaintiff does not know the total amount of said investments, nor the amount thereof, if any, that were guaranteed by INTERNATIONAL BANK inasmuch as the information conveyed to the beneficiaries about said investments by Mercantile Bank was deliberately inaccurate. Plaintiff believes that there was in excess of a million and a half dollars so invested. Had the beneficiaries known of this they could have appointed an investment committee or removed Mercantile Bank as Trustee.
 
 
 10
 35. On or about December, 1976, advisors of the beneficiaries of the Trusts were informed that the Trusts had some three million five hundred thousand dollars not committed to liabilities or other investments. Mercantile Bank further informed the advisors of the beneficiaries that it intended to invest said funds in certificates of deposit in a bank or banks in London, England. Contrary to said representations said funds were invested, without the knowledge of the beneficiaries or any of their advisors, in certificates of deposit of Mercantile Bank. At that time Mercantile Bank knew it would not redeem the certificates of deposit.
 
 
 11
 In analyzing these allegations and in construing the statutory term "security," we keep in mind that the securities acts should be construed broadly as remedial legislation to effectuate their purposes. One of the central purposes of securities legislation is the protection of investors, and in effectuating that purpose, "form should be disregarded for substance and the emphasis should be on economic reality." Tcherepnin v. Knight, 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564 (1967).
 
 
 12
 The only material allegations in the complaint referring to what are intended to be securities are that trust funds were invested by Mercantile as trustee in its own certificates of deposit, without any description of the terms or conditions or characteristics or nature of the certificates of deposit.[6] We are left with the bare words "certificates of deposit" and must begin our analysis with them. It is difficult to raise substance over form or to consider economic reality if no facts identifying the substance or reality of these certificates of deposit are alleged in the complaint.
 
 
 13
 The Supreme Court has observed that "(t)he starting point in every case involving the construction of a statute is the language itself." International Brotherhood v. Daniel, 439 U.S. 551, 558, 99 S.Ct. 790, 795, 58 L.Ed.2d 808 (1979). In holding that the securities acts do not apply to a noncontributory, compulsory pension plan, the Court considered the fact that the Congressional definition of security[7] did not refer to pension plans of any type. Id.
 
 
 14
 Section 3(a)(10) of the 1934 Act refers to "certificate of deposit, for a security."[8] The plaintiff concedes that this language typically refers to instruments issued by protective committees in the course of corporate reorganizations and "has nothing to do with the instruments here at issue." Brief of Plaintiff at 9. Although the phrase inclusio unius est exclusio alterius is seldom employed in modern times, it is a fact for consideration that Congress could have expressly included all certificates of deposit by eliminating "for a security" and thus could have included certificates representing currency deposits as well as security deposits.
 
 
 15
 In its most recent cases defining securities, the Supreme Court has tended to take an over-all approach to reaching the genre rather than focusing upon specific terms. In United Housing Foundation, Inc. v. Forman, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 489 (1975), the Court said:In considering these claims we again must examine the substance the economic realities of the transaction rather than the names that may have been employed by the parties. We perceive no distinction, for present purposes, between an "investment contract" and an "instrument commonly known as a 'security.' " In either case, the basic test for distinguishing the transaction from other commercial dealings is
 
 
 16
 "whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." Howey, 328 U.S., at 301, 66 S.Ct., at 1104.
 
 
 17
 This test, in shorthand form, embodies the essential attributes that run through all of the Court's decisions defining a security. The touchstone is the presence of an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others. By profits, the Court has meant either capital appreciation resulting from the development of the initial investment as in (S. E. C. v. C. M.) Joiner (Leasing Corp., 320 U.S. 344, 64 S.Ct. 120, 88 L.Ed. 88), supra (sale of oil leases conditioned on promoters' agreement to drill exploratory well), or a participation in earnings resulting from the use of investors' funds, as in Tcherepnin v. Knight, supra (dividends on the investment based on savings and loan association's profits). In such cases the investor is "attracted solely by the prospects of a return" on his investment. Howey, supra, at 300, 66 S.Ct., at 1103. . . . ([9] )
 
 
 18
 421 U.S. at 851-52, 95 S.Ct. at 2060.
 
 
 19
 Before applying the "basic test" and "touchstone," it is necessary to describe the instrument held to be a security in Tcherepnin v. Knight, 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967). It was a withdrawable capital share in a state-chartered savings and loan association. Each holder of a withdrawable capital share became a member of the association entitled to vote; instead of receipt of a fixed rate of return, the holder received dividends declared by the board of directors and based on the association's profits; voluntary withdrawals were restricted by state statute; and the shares were nonnegotiable and not subject to the Uniform Commercial Code. The Court closely examined state law to determine these exact attributes of a withdrawable capital share. Id. at 337, 88 S.Ct. at 553.
 
 
 20
 Mercantile is called a bank and presumably carried on what are ordinarily considered to be banking operations, yet the complaint is silent as to the status, functions and nature of such an institution under Bahamian law. Under the laws of the United States, it is unlawful for any person or organization engaged in issuing securities to engage at the same time in usual banking operations such as issuing certificates of deposit. 12 U.S.C. § 378(a)(1). There are other banking laws and regulations which prohibit national banks from issuing securities. See Investment Company Institute v. Camp, 401 U.S. 617, 91 S.Ct. 1091, 28 L.Ed.2d 367 (1971). Without any information as to Bahamian law, we must assume that banks generally do not ordinarily issue securities as a function of their banking operations.
 
 
 21
 The Fifth Circuit has held that a certificate of deposit issued by a national bank in exchange for currency is not a security. Bellah v. First National Bank of Hereford, 495 F.2d 1109, 1114-16 (5th Cir. 1974).[10] The certificate of deposit of a Mississippi savings and loan association was held not to be a security in Hamblett v. Board of Savings and Loan Associations of Mississippi, 472 F.Supp. 158 (N.D.Miss. 1979), with the court reasoning that a deposit of currency with a fixed or stated rate of interest, uninfluenced by the profits of the association, was an entirely different kind of instrument than that held to be a security in Tcherepnin.
 
 
 22
 In Hendrickson v. Buchbinder, 465 F.Supp. 1250 (S.D.Fla. 1979), the certificates of deposit issued by four Bahamian business entities (two banks and two savings and loan associations) were held not to be securities where the complaint alleged only that the certificates "represent time and demand deposits for which the depositor is entitled to a return based upon the prevailing interest rate."
 
 
 23
 In the present case, not even these bare facts are alleged. Although the plaintiff assumed that the certificates provided a fixed-interest return, this fact is not alleged in the complaint. The plaintiff has argued that a fixed rate of return is a "profit" within the meaning of Howey and Tcherepnin, and that the fact that Mercantile might fail or succeed, and might either return the depositor's deposit or not, sufficiently tied the depositors in a common enterprise with the persons involved in some outside speculative ventures. If these arguments were valid, there would no longer be any validity to the distinction between commercial and investment transactions since any depositor in a failed bank could claim the same protection accorded security holders.
 
 
 24
 We conclude that on this record with this complaint there is no showing of a scheme involving an investment of money in a common enterprise with profits to come from the efforts of others. Nor is there adequate pleading of an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others. The complaint simply describes a victim whose currency was being held in a commercial transaction and not a victim-investor aspiring for profits. Unlike the situation in Tcherepnin, the plaintiff here was not a voting member or shareholder in Mercantile and did not expect to obtain dividends based on Mercantile profits.
 
 
 25
 We have been cautious not to say that any document called a certificate of deposit cannot be a security. The definitional provision begins with the words "unless the context otherwise requires" and if a victim can adequately plead non-conclusory allegations showing the context, substance and reality surrounding the sale or purchase of a particular investment, he may well succeed. However, such a pleading would require the great host of additional facts that we have indicated were lacking in the present complaint.
 
 The judgment appealed from is affirmed.[11]
 
 
 [1]
 In its complaint, plaintiff alleged that the insiders and controlling persons of Mercantile diverted the assets of Mercantile to their own use "for the purpose of engaging in highly speculative transactions for which bank loans would never be properly forthcoming" and that Price Waterhouse & Co. conducted and published audits of Mercantile which concealed the bogus loans. Complaint, Count I, PP 13 & 20. Plaintiff alleged that the bank failed and the trust assets were lost as a result of this alleged fraudulent conduct
 
 
 [2]
 Jurisdiction is predicated upon Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa. Diversity of citizenship was also alleged but was later abandoned. It was alleged that federal jurisdiction for the common law claims was sustained through pendent jurisdiction
 
 
 [3]
 Section 3(a)(10) of the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)(10), provides as follows:
 (a) When used in this chapter, unless the context otherwise requires
 (10) The term "security" means any note, stock, treasury stock, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit, for a security, or in general, any instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance, which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited.
 
 
 [4]
 The dictionary definition of "certificate" includes "a signed, written, or printed testimony to the truth of something," Webster's 3rd New International Dictionary (unabridged 1966) and the legal dictionary includes
 (a) written assurance, or official representation, that some act has or has not been done, or some event occurred, or some legal formality been complied with.
 Black's Law Dictionary (Rev. 4th ed. 1968).
 
 
 [5]
 Contracts, of course, may be written or oral. When the Supreme Court spoke about one type of security an "investment contract" it noted that it is "immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise" and added that the ordinary concept of a security "embodies a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." S. E. C. v. Howey Co., 328 U.S. 293, 299, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244 (1946). Oral agreements have been held to be securities, S. E. C. v. Addison, 194 F.Supp. 709, 722 (N.D.Tex.1961), and "(f)raudulent representations as to securities not yet issued offer fully as much reason for invoking the protection of the securities laws." Lawrence v. S. E. C., 398 F.2d 276, 279-80 (1st Cir. 1968)
 
 
 [6]
 In addition to paragraphs 34 and 35, paragraph 33 alleged that from June 3, 1971 to early December 1976, Mercantile as trustee "suggested to advisors of the beneficiaries of the Trusts that Mercantile Bank invest trust funds in certificates of deposit of the bank" but Mercantile was informed by the advisors that such investments should be no larger than $500,000 and should be guaranteed by International Bank. The use of the words "invested" and "investments" in paragraphs 33, 34 and 35 is conclusory
 
 
 [7]
 See note 3 supra
 
 
 [8]
 15 U.S.C. § 78c(a)(10). The definition of security in Section 2(1) of the Securities Act of 1933, 15 U.S.C. § 77b(1), is virtually identical and the coverage of the two acts is ordinarily considered the same. United Housing Foundation, Inc. v. Forman, 421 U.S. 837, 847 n.12, 95 S.Ct. 2051, 2058 n.12, 44 L.Ed.2d 489 (1975). The 1933 Act refers to "certificate of deposit for a security" without the use of a comma
 
 
 [9]
 The citations for the cases mentioned in the quotation are: S. E. C. v. W. J. Howey Co., 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946); S. E. C. v. C. M. Joiner Leasing Corp., 320 U.S. 344, 64 S.Ct. 120, 88 L.Ed. 88 (1943); and Tcherepnin v. Knight, 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967)
 
 
 [10]
 The Fourth Circuit held that a certificate of deposit issued by a savings and loan association was not a security, Burrus, Cootes and Burrus v. MacKethan, 537 F.2d 1262 (4th Cir. 1976), but the opinion was later withdrawn when the case became moot. 545 F.2d 1388, 1391 (4th Cir. 1976)
 
 
 [11]
 Because of our conclusion that no security was properly pleaded, we have not considered whether there was a sufficient nexus with the United States to create securities act protection. We observe in passing, however, that a great deal more particularized pleading would seem to be needed in that area also