Edwin R. MacKETHAN, Receiver of
Norfolk Savings and Loan
Corporation, Appellee,

v.

BURRUS, COOTES AND BURRUS,
et al., Appellants.

No. 75–2130.

United States Court of Appeals,
Fourth Circuit.

Argued May 5, 1976.

Decided Dec. 10, 1976.

Harvey L. Pitt, General Counsel, Jacob H. Stillman, Asst. General Counsel, and Frank A. Wilson, Atty., Washington, D. C., filed a brief for the Securities and Exchange Commission, amicus curiae, in support of appellee's petition for rehearing.

Robert M. Hughes, III, and C. Michael Montgomery, Norfolk, Va. (Richard S. Harman, Jerrold G. Weinberg, Seawell, McCoy, Dalton, Hughes, Gore & Timms, Stackhouse, Weinberg & Stewart, Norfolk, Va., on brief), for appellants.

J. Vernon Patrick, Jr., Birmingham, Ala. (Barton S. Sacher, Berkowitz, Lefkovitz & Patrick, Birmingham, Ala., Oren R. Lewis, Jr., John E. Fricker, Lewis, Wilson, Cowles, Lewis & Jones, Ltd., Arlington, Va., on brief), for appellee.

Before RUSSELL, WIDENER, Circuit Judges, and WYZANSKI, Senior District Judge.*

WYZANSKI, Senior District Judge:

Following the July 21, 1976 filing of our opinion and entry of our judgment in this case, see 537 F.2d 1262 (C.A.4, 1976), appellees, supported by the SEC as *amicus*, petitioned for rehearing. Responding, we withdraw our earlier opinion, substitute this one, and leave unchanged our July 21, 1976 judgment which reversed the District Court's judgment and directed that a judgment for defendants be entered in the District Court.

As submitted by the District Judge in his charge to the jury (not as pleaded in the three-count complaint), this case (alleged to be an action under § 10(b) of the Securities

* Sitting by designation.

Exchange Act of 1934 and Rule 10b–5 promulgated thereunder, 15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b–5) presented the issues whether defendants Burrus, Cootes and Burrus (a partnership of certified accountants and its partners), by failing to disclose facts readily available to them in 1971 and 1972, aided and abetted violations of the Securities Act of 1933 and of the Securities Exchange Act of 1934, committed by Hall, Warren, and other officers and employees of Norfolk Savings and Loan Corporation, a savings and loan corporation organized under the law of the State of Virginia, all as part of a scheme to defraud that corporation; if so, whether those violations caused damages to the savings and loan corporation; and, if so, regardless of the relative blame between defendants and others, what losses (including losses before 1971 concealed from NS&L by the wrongful acts or omissions of defendants) did NS&L, as distinguished from its creditors, depositors, or shareholders sustain.

The District Court instructed the jury that "The security here invested is the certificate of investment issued to an individual depositor, and you are told that this is a security within the meaning of the Federal Securities Law as a matter of law."

Responding to the District Judge's instructions, which, obviously, unified the three-count complaint, eliminated any cause of action based upon local law of the State of Virginia, purged the case of any suggestion that defendants were principals, emphasized that they were charged solely as abettors of a scheme of the officers and employees of NS&L to defraud NS&L, included in potential damages all fraudulent acts involved in the alleged scheme, regardless of the date of their occurrence, which defendants concealed from NS&L, and precluded apportionment of blame between defendants and such other participants in the alleged scheme as were not defendants, the jury returned a verdict of $1,100,000 and interest for plaintiff, MacKethan, who as the receiver of NS&L appointed by the Court of Law and Chancery (now the Circuit Court) of Norfolk, Virginia, had become, by operation of law, assignee of the claims of NS&L.

The District Court entered on July 25, 1975 judgment on the verdict.

Defendants moved to have allowed as a credit against that judgment of $1,100,000 plus interest, the $6,000,000 paid to MacKethan, Receiver of NS&L jointly by Virginia National Bank (VNB), Landmark Communications, Inc., Landmark Securities, Inc., Paul S. Huber, Jr., S. C. Lampert, James W. Roberts, Herman L. Wright, and Henry J. Lankford in order to release all claims that the Receiver had against VNB and the other corporations and individuals just named, including all claims "asserted in civil actions heretofore instituted by the Receiver against the Released Parties, *provided*, however, that this Release is without prejudice to claims" against BC&B and its partners, who, of course, are parties to the instant case.

The foregoing settlement agreement, to which defendants' motion in the District Court refers was executed March 2, 1975, and was later amended in respects not here material. In the settlement agreement (in addition to matters not here relevant, such as a $600,000 payment to settle a class suit, 74–0013–R, brought by Smith and other so-called investors in NS&L) there were careful recitals that among the claims being released by Receiver MacKethan were (1) those which the Receiver had presented against Virginia National Bank in Civil Action No. 203–74–A, in which a jury had returned a verdict for the Receiver and a judgment had been entered in favor of the Receiver, but there was pending a motion by VNB for judgment notwithstanding the verdict or for a new trial, and (2) those which the Receiver had presented against Landmark Communications, Inc. and Landmark Securities, Inc. in Civil Action No. 202–74–A, in which a jury had returned a verdict for the Receiver, and judgment had been entered in favor of the Receiver, but there was pending a motion by defendants for judgment notwithstanding the verdict or for a new trial.

Examination of the pleadings in Civil Action No. 203–74–A, the suit against VNB, and in Civil Action No. 202–74–A, the suit against Landmark Communications, Inc. and Landmark Securities, Inc., as well as other parts of the voluminous record before us, fully supports the statement in the July 29, 1975 Memorandum and Order of District Judge Bryan, who had tried those two cases as well as the instant one, that "The testimony in all three actions concerning damages was substantially the same. In each action the plaintiff claimed damages totalling between ten and eleven million dollars."

Indeed, there seems to us no other way of looking at these three cases, 203–74–A, 202–74–A, and the instant case, other than as based, in each instance, on the claim of the Receiver of NS&L that that corporation was defrauded of $11 million by a scheme of directors and officers of NS&L aided and abetted by VNB and by accountants including BCB and its partners. The operative facts were substantially similar in the claims against each alleged participant in the scheme; although to reach the alleged wrongdoer reliance was placed sometimes upon state law and sometimes upon the federal Securities Act of 1933 and Securities Exchange Act of 1934.

Logically there is, apparently, at least a partial overlap between what was covered by the jury verdict in the instant case and by the March 2, 1975 settlement.

The jury in the instant case (not knowing anything about the earlier cases No. 203–74–A and 202–74–A, nor anything about the $6 million settlement) assessed at a total of $1,100,000 the damages sustained by the Receiver from such part of the scheme as BCB and its partners abetted. Inasmuch as the jury's verdict in the instant case was not tailored to special questions, we do not know whether the jury regarded BCB as having abetted the *whole* of the scheme, or as having abetted only the fraudulent activities *after 1971* without participating in the concealment of the pre-1971 frauds. Either possibility would have been consonant with the options left to the jury by Judge Bryan in his charge. What

we do know is that the March 2, 1975 settlement with the Receiver gave him $6,000,000 part of which, if not all of which, necessarily covers the same damages to NS&L as were included in the $1,100,000 verdict and judgment in this instant case. And, indeed, there seems no rational ground for supposing that less than $1,100,000 of the $6,000,000 settlement payment applied to the very same damages embraced by the jury's verdict in the instant case.

Nonetheless, in his July 29, 1975 Memorandum and Order District Judge Bryan denied *in toto* defendants' motion for a credit on the judgment. His reasoning was that "It is impossible for the Court, with or without the benefit of the former trial proceedings, to apportion the verdicts or the settlement payments, or all of them, so that it can be determined whether there is an overlapping of recoveries." For the reasons given in the previous paragraph of the present opinion, we differ with the District Judge. Nor do we find ourselves in agreement with the way he disposes of the cases which have led the American Law Institute to propose in a tentative draft of Restatement (Second) of Torts § 885(3) (Tent. Draft No. 16, 1970) the following rule:

Payments made by any person in compensation of a claim for a harm for which others are liable as tort-feasors diminish the claim against them, whether or not the person making the payment is liable to the injured person, and whether or not it is so agreed at the time of payment, or the payment is made before or after judgment. The extent of the diminution is the amount of the payment made, or a greater amount if so agreed. Restatement (Second) of Torts, § 885(3) (Tent. Draft No. 16, 1970).

We feel constrained to reverse the judgment of the District Court, and to direct it to use the $6,000,000 settlement payment made to the Receiver as a credit wiping out the whole of defendants' liability under the verdict and judgment for $1,100,000 and costs.

Our conclusion is supported not only by the proposed Restatement of Torts but also

by a host of authorities of which it will be sufficient to cite *Snowden v. D. C. Transit System*, 147 U.S.App.D.C. 204, 454 F.2d 1047 (1971); *Screen Gems-Columbia Music v. Metlis & Lebow Corporation*, 453 F.2d 552, 554 (2nd Cir., 1971); and *Gill v. United States*, 429 F.2d 1072, 1078–1079 (5th Cir., 1970). See NOTE, *Consequences of Proceeding Separately Against Concurrent Tortfeasors*, 68 Harv.L.Rev. 697, 699 (1955); Prosser, Torts, (4th ed., 1971) 310–311.

We are not unmindful that there are often subtleties, both substantive (see *Rose v. Associated Anesthesiologists*, 163 U.S. App.D.C. 246, 501 F.2d 806 (1974)) and procedural (see *Schumacher v. Rosenthal*, 226 F.2d 946, 948 (7th Cir. 1955)) involved in cases where credit is sought by one joint tortfeasor for amounts paid to the injured party by another joint tortfeasor. The primary and secondary authorities which we have cited above furnish from case-law, statutes, model uniform laws, textbooks, and student-notes a wealth of suggestive possibilities. They frequently assume the debatable premise that although it is unjust for the injured person to get paid more than a tribunal has found that he was damaged, it is more unjust that one held to be a wrongdoer should escape any payment because the tribunal in his case found that the injured party suffered lower damages than another tribunal or a settlement agreement had considered as the damages suffered by the same injured party as a result of the same conduct participated in concurrently by the wrongdoer at bar and by the wrongdoer who settled or was earlier adjudicated liable.

But this is not a case in which this court or the trial court needs to invent or apply a subtle rule of doubtful validity. Here there is a plain, straightforward reason to allow defendants a full credit. If the jury in this case was correct in concluding, as we must assume that it did if it followed the judge's charge, that NS&L was damaged by BCB to the extent of only $1,100,000 by fraudu-

lent conduct abetted by defendants, it follows that the Receiver has no grievance if we attribute a little more than one-sixth of the $6,000,000 which he received as a result of the March 1975 settlement, to damages caused by such fraudulent conduct. The record proves that, measured in any way,— by time-span, by participants, by number of wrongful acts, by magnitudes of fraudulent transactions—one-sixth is demonstrably a gross understatement of an appropriate attribution to that portion of the wrongdoers' fraudulent conduct abetted by defendants.

From the text of this opinion it is transparent that we have not in any way relied for our judgment upon the grounds given in our withdrawn opinion, dated July 21, 1976, appearing in 537 F.2d 1262. Yet we deem it appropriate to emphasize that we are not taking any position on the questions (1) whether the District Judge was justified in ruling as a matter of law, instead of submitting to the jury, the issue whether NS&L certificates of investment were "securities" within the meaning of § 3(a)(10) of the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)(10); (2) whether the gap in the record as originally presented to us can be supplemented in the way used by appellee; and (3) whether, if the certificates of investment varied in type, it was necessary in order to prove his case for plaintiff Receiver to have shown with specificity when a particular type of certificate was issued, inasmuch as the time of the first issue of that particular type might mark the exact extent of application of federal law. All such questions have become moot as a result of the ground on which we now have rested our reversal of the District Court's judgment.

Petition for rehearing granted; but the July 21, 1976 judgment of this court is re-affirmed, and the judgment of the District Court stands reversed with directions to the District Court to enter judgment for defendants.