Ruth JOHNSON, Appellee,

v.

John ROGERS, Appellant, County of
Meeker of the State of
Minnesota, Appellee.

Nos. 79–1441, 79–1457.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 6, 1979.

Decided May 7, 1980.

Ronald C. Anderson, Hulstrand, Anderson, Larson & Boylan, Willmar, Minn., for Rogers.

W. B. Haas, Hutchinson, Minn., for Johnson.

Before HEANEY and HENLEY, Circuit Judges, and SCHATZ,* District Judge.

SCHATZ, District Judge.

In this civil rights action,[1] the defendant below, Sheriff John Rogers of Meeker County, Minnesota, was found liable by a jury for the damages suffered by the plaintiff, Ruth Johnson, in connection with her termination from employment as a deputy sheriff. Sheriff Rogers appeals from the judgment entered on the verdict, and Ms. Johnson cross-appeals from a remittitur ordered by the district court.[2] For reasons stated below, we affirm on both the appeal and cross-appeal.

During the spring and summer of 1974, the Meeker County Sheriff's Office experienced a number of security problems involving the disappearance of various records and personnel files. The plaintiff was a deputy sheriff at this time assigned as a radio dispatcher. Sheriff Rogers became increasingly concerned about office security and, in an effort to discover who was involved in these incidents, began making unannounced visits to check on the office at various times. On November 3, 1974, the sheriff went out of town, but instructed his assistant, Mary Kalkbrenner, to hide herself in the record-keeping office that night and the early morning of November 4, where she could tape record the activities taking place in the adjacent dispatcher's office.

On November 4, the plaintiff worked the 12 a. m. to 8 a. m. shift. At approximately 1 a. m., two city policemen arrived at the sheriff's office on police business. After completing their official business, the officers went to the locked door of the record-keeping office, where Ms. Kalkbrenner was secreted, and one of the officers attempted to show the other how to spring a lock with a credit card. The door to the record-keeping office would not open, however, and Ms. Kalkbrenner recorded only some muffled voices and rattling noises. The plaintiff ended her shift later that morning. She did not report any unusual occurrences in the log book.

Sheriff Rogers was informed of these events by Ms. Kalkbrenner on the afternoon of November 4. The sheriff testified that he was upset by what he heard, but took no action until the morning of November 5, when he called the plaintiff to his office. Also present at this meeting was the chief deputy and the union steward. After advising the plaintiff of her legal rights, the sheriff questioned her about the November 4 incident. The sheriff repeatedly told the plaintiff that he "knew all about what went on," referred to the incident as an "attempted break-in," and questioned the plaintiff about other suspected record-taking incidents. The plaintiff denied that any wrongdoing had taken place on November 4, or that she had any knowl-

---

* The Honorable Albert G. Schatz, United States District Judge for the District of Nebraska, sitting by designation.

1. 42 U.S.C. § 1983; 28 U.S.C. § 1343(3).

2. The Honorable Earl R. Larson, Senior District Judge, United States District Court for the District of Minnesota.

edge of other incidents. Later that day, the sheriff gave the plaintiff a termination notice. Although the plaintiff's union contract called for a suspension before final termination, this procedure was not followed.

That night, the eve of the sheriff's re-election to office, the sheriff disclosed to the news media that there had been "an attempted illegal entry" by two city policemen, that a sheriff's office dispatcher was present at the time, and that the dispatcher had been terminated from employment. The release did not mention any names, but it was general knowledge in the community that the termination referred to the plaintiff.

The two police officers involved in the incident and the plaintiff commenced libel actions in state court, which culminated in a determination by the Minnesota Supreme Court on August 12, 1977, that the sheriff's disclosures to the news media did not as a matter of law, show malice. Because no malice was established, the plaintiff was not allowed to recover in that action. *Hiram v. Rogers*, 257 N.W.2d 563 (Minn.1977).

Simultaneously with the commencement of the state court action, the plaintiff commenced this action against Sheriff Rogers and the County of Meeker. Sheriff Rogers filed a cross-claim against the county seeking indemnity or contribution. Before trial, the plaintiff settled with the county for $7,500 pursuant to a "Pierringer release." [3] The plaintiff's claim against the county was accordingly dismissed and the district court also dismissed the sheriff's cross-claim against the county on the grounds, first, that the cross-claim was untimely filed and, second, that "the so-called Pierringer release takes the county out of the case." The case was submitted to the jury on the theory that the plaintiff's termination from employment by the sheriff amounted to a deprivation of liberty without due process of law. The jury found for the plaintiff and awarded her damages of $15,000. The district court denied a motion by the sheriff for judgment notwithstanding the verdict,

but granted the sheriff's motion for a new trial unless the plaintiff agreed to remit $7,500 of the $15,000 award. The plaintiff consented to the remittitur and this appeal and cross-appeal followed.

The sheriff appeals from the judgment of the district court on the grounds that (1) the plaintiff was paid the total amount of her damages by virtue of the release entered into by the plaintiff with the County of Meeker; (2) the *res judicata* effect of the plaintiff's state court action barred this action; (3) the plaintiff failed, as a matter of law, to establish that a constitutional right was violated by the sheriff; and (4) the state court's determination of lack of malice on the part of the sheriff compelled a finding of good faith in this action as a matter of law.

The plaintiff cross-appeals on the basis that the district court abused its discretion in conditioning the denial of the motion for new trial on the plaintiff's assent to a remittitur of the damages.

I.

The sheriff's first argument is that the plaintiff, by entering into a Pierringer release with the County of Meeker, has agreed to credit the amount received in settlement against any judgment obtained against the sheriff. In concrete terms, it is argued that the plaintiff may recover nothing from the sheriff because from the ultimate award of damages, $7,500, there must be deducted the amount of the settlement, $7,500. Otherwise the plaintiff will recover $15,000, when her damages were determined by the district court to have been only $7,500. The release in question, however, does not by its terms require the plaintiff to credit, under all circumstances, the amount received in settlement against whatever damages are determined in the trial of her suit. Rather, the plaintiff has agreed to credit and satisfy only "that portion of the total amount of her damages * * * which may hereafter be allocated in the trial or otherwise to causual [sic] acts

---

3. *Pierringer v. Hoger*, 21 Wis.2d 182, 124 N.W.2d 106 (1963).

or admissions [sic] on the part of the Defendant County of Meeker." [4]

Since damages were not apportioned at trial, nor liability assessed against or allocated to the County, the release does not obligate the plaintiff to credit any of the settlement amount against the judgment obtained against the sheriff.

Nor is a different conclusion required because the settlement agreement in question may be denominated a Pierringer release. In *Pierringer v. Hoger*, 21 Wis.2d 182, 124 N.W.2d 106 (1963), the Wisconsin Supreme Court approved of a release in which the plaintiff agreed to satisfy a portion of the cause of action and reserve the balance against a non-settling defendant. Since in that action the plaintiff had agreed to satisfy such percentage of the total damages as had been caused by the settling defendant, the settling defendant was protected from any further liability to the plaintiff and also from any claims of contribution from the non-settling defendant. For the same reason, the non-settling defendant had no cause for complaint because he would be liable only for that portion of the damages attributable to his own actions. In *Pierringer*, therefore, it is apparent that an allocation of liability between the settling and non-settling defendants was contemplated, and that the plaintiff agreed to de-

duct from his ultimate award of damages only that amount which was attributable to the fault of the settling defendant. Since the *Pierringer* decision, in fact, the Wisconsin Supreme Court has continued to hold that the burden is on a non-settling defendant to establish his entitlement to a credit, and that where no evidence relative to the settling defendant's liability is introduced at trial, a non-settling defendant may not receive credit for a settlement entered into between the plaintiff and the settling defendant. *Stanhope v. Brown County*, 90 Wis.2d 823, 855, 280 N.W.2d 711, 725 (1979).

Although under the circumstances of this action the plaintiff is not obligated by the terms of the settlement agreement to credit or satisfy any portion of the judgment against the sheriff, it must still be determined whether as a matter of law or policy the plaintiff is nonetheless obligated to do so. A maxim of equity provides that ordinarily a plaintiff ought not recover more than the loss he has actually suffered. *Snowden v. D. C. Transit System, Inc.*, 454 F.2d 1047, 1048 (D.C. Cir. 1971). Emphasizing this principle, some courts have suggested that in order to prevent a plaintiff from being unjustly enriched, a non-settling defendant should always be allowed a credit where the plaintiff has settled with less than all of those alleged to have been tortfeasors.[5]

---

**4.** In its entirety, Paragraph II of the release provides:

The Undersigned hereby credits and satisfies that portion of the total amount of her damages which were [sic] caused by the alleged deprivation of civil rights and wrongful discharge from employment, if any, of Defendant John Rogers, and County of Meeker, and others as may hereinafter be determined in the trial of the aforesaid law suit which may hereafter be allocated in the trial of the aforesaid law suit or otherwise to causual [sic] acts or admissions [sic] on the part of the Defendant County of Meeker.

**5.** *See, e. g., MacKethan v. Burrus, Cootes and Burrus*, 545 F.2d 1388 (4th Cir. 1976); *Snowden v. D. C. Transit System, Inc.*, 454 F.2d 1047 (D.C. Cir. 1971). As noted by the *Snowden* court, a common exception to this principle is the collateral source rule. However, the court in *Snowden* thought that the collateral source rule, which applies to gratuitous or pre-planned benefits such as insurance and sick pay, could

not be tortured to encompass settlements made in contemplation of litigation, even when made by a defendant later found not liable to the plaintiff. "A settlement made by one liable potentially, but not in fact, is made under Damoclean pressure, not gratuitously." *Snowden, supra*, 454 F.2d at 1049.

Most of the cases adopting this approach, however, have not allowed a non-settling defendant a credit exceeding the pro rata share of the verdict ascribable to the settling defendant. In *Rose v. Associated Anesthesiologists*, 501 F.2d 806 (D.C. Cir. 1974), for example, the court reasoned that as the one compensation rule of *Snowden* was grounded on unjust enrichment, it should not be applied in such a way as to generate unjust enrichment to the only litigating defendant. Apportioning liability by dividing the assessed damages equally among the number of defendants, the court held that a *Snowden* credit is subject to a limitation of amount so as to assure that the

The Minnesota courts, however, have recognized exceptions to the above-stated rule. In *Anunti v. Payette*, 268 N.W.2d 52, 56 (Minn.1978), the Minnesota Supreme Court concluded that where a settling defendant has been found not liable at trial, it would be inequitable for a non-settling defendant to profit from a settlement agreement entered into by the plaintiff with the settling defendant. Under these circumstances, the court held that a non-settling defendant would not be entitled to any credit on the judgment obtained against him.

Similarly, in *Barlage v. The Place, Inc.*, 277 N.W.2d 193, 196 (Minn.1979), the Minnesota Court held that where a non-settling defendant has dismissed with prejudice an action for contribution against a settling defendant, no credit against the verdict would be allowed. In that case, the plaintiff, while operating a motorcycle, was struck by a car. The plaintiff entered into a loan-receipt agreement and a contract for release with the driver of the car and his insurer, and filed a dram shop action against The Place, Inc. In the dram shop action, The Place, Inc., filed a third party action against the driver of the car, but eventually dismissed this third party action with prejudice. When liability in the amount of $700,000 was assessed against The Place, Inc., it sought to escape the consequences of its voluntary dismissal of the driver, and to have the benefit of the amount paid by the driver in settlement.

The Supreme Court of Minnesota conceded that the driver was obviously negligent, and noted that but for the action of the non-settling tortfeasor, the amount of settlement would have been deducted from the verdict. The court decided, however, that having dismissed the settling tortfeasor with prejudice, the non-settling defendant was precluded from claiming contribution, and had no standing to complain that the plaintiff was obtaining a partial double recovery.

In light of these two decisions, we are persuaded that under the circumstances of this case the Minnesota courts would not allow any credit on the judgment obtained against the sheriff. As in *Anunti*, the liability of the settling defendant in this action has not been established. As in *Barlage*, the non-settling defendant's claim for contribution or indemnity has been dismissed, and at least one of the grounds for dismissal, that the claim was untimely filed, resulted from the action or inaction of the non-settling defendant himself. Hence, like the non-settling defendant in *Barlage*, the non-settling defendant here has no ground to complain that the plaintiff is obtaining a double recovery.

Adopting Minnesota law as the federal rule of decision for this issue,[6] we hold that the sheriff may not deduct from the judgment obtained against him the amount of the settlement negotiated between the plaintiff and the County of Meeker.

---

defendant held liable in the litigation does not pay less than his equitable share.

Other cases have applied a similar limitation on any credits allowed to a non-settling defendant, but have determined the limitation by taking into consideration the settling defendant's proportional fault. In such a case, the fault of each defendant is apportioned by the factfinder and a non-settling defendant is always liable for his proportionate share of the judgment regardless of what the other defendants have settled for. *See, e. g., Leger v. Drilling Well Control, Inc.*, 592 F.2d 1246 (5th Cir. 1979); *Doyle v. United States*, 441 F.Supp. 701, 710 (D.S.C.1977).

**6.** Since this is a civil rights action brought under 42 U.S.C. § 1983, § 1988 determines choice of law. As construed by the Supreme Court in *Robertson v. Wegmann*, 436 U.S. 584, 588–90, 98 S.Ct. 1991, 1995, 56 L.Ed.2d 554

(1978), § 1988 instructs that if federal law does not cover an issue, then state law should provide the rule of decision unless " 'inconsistent with the Constitution and laws of the United States.' " In the instant case, as federal law does not answer the question of the effect of a plaintiff's settlement with one defendant on an award of damages against a non-settling defendant, state law should serve as the federal rule of decision unless inconsistent with the policies underlying a § 1983 cause of action. Among the principal objectives of § 1983 are "compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law." *Robertson v. Wegmann, supra,* 436 U.S. at 590–91, 98 S.Ct. at 1995. Neither of these concerns would seem to be hindered by adoption of the Minnesota Court's approach.

## II.

The remaining contentions of the appellant-sheriff are also unavailing. The sheriff's second argument is that the *res judicata* effect of the state action filed by the plaintiff foreclosed a further action for damages against the sheriff. This issue appears to have been raised for the first time in the sheriff's motion for judgment notwithstanding the verdict. Judge Larson correctly ruled that, since this issue was not pleaded or argued at trial, Federal Rule of Civil Procedure 8(c) makes this defense unavailable to the sheriff. *See Sartin v. Commissioner of Public Safety of the State of Minnesota*, 535 F.2d 430, 433 (8th Cir. 1976). Additionally, we note that since a motion for judgment notwithstanding the verdict is " 'technically only a renewal of the motion for a directed verdict made at the close of the evidence, it cannot assert a ground that was not included in the motion for a directed verdict.' " *Sulmeyer v. Coca Cola Company*, 515 F.2d 835, 846 (5th Cir. 1975) (quoting 9 Wright and Miller, *Federal Practice and Procedure*, Section 2537 at 598 (1971)). Having failed to raise the issue of *res judicata* during trial, the sheriff was not entitled to raise that issue in his motion for judgment notwithstanding the verdict.

## III.

The sheriff's third argument is that the plaintiff failed, as a matter of law, to establish that a constitutionally protected right inuring to the plaintiff was infringed by the sheriff. More specifically, the sheriff contends that the evidence disclosed neither a liberty interest protected by the Constitution, nor a deprivation of such an interest without due process of law. As the claim submitted to the jury was that the sheriff had deprived the plaintiff of a liberty interest without due process of law, the sheriff urges that he is entitled to judgment as a matter of law. The trial court's instructions were not objected to by the sheriff, and the issue is, therefore, whether under the applicable law the evidence was sufficient to support the verdict of the jury. Considering the evidence in the light most favorable to the plaintiff, and assuming that all conflicts in the evidence were resolved by the jury in favor of the plaintiff, *Griggs v. Firestone Tire and Rubber Company*, 513 F.2d 851, 857 (8th Cir.), *cert. denied*, 423 U.S. 865, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975), we have no difficulty in concluding that there was sufficient evidence to support the jury's finding that the plaintiff had been deprived of a liberty interest protected by the Constitution without due process of law.

As we noted in *Owen v. City of Independence, Missouri*, 589 F.2d 335, 338 n.1 (8th Cir. 1978), *cert. granted*, —— U.S. ——, 100 S.Ct. 42, 62 L.Ed.2d 28 (1979), the Supreme Court's decisions in *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) and *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), crystalized the rule

> that a public employee, in the context of being terminated under circumstances imposing a stigma on his professional reputation and impairing his ability to find future employment, was entitled to notice and a name-clearing hearing.

In the present case, evidence was presented that the sheriff, in connection with the plaintiff's termination from employment, issued a news release in which the plaintiff was associated with an "attempted illegal entry," that the remarks of the sheriff seriously damaged the plaintiff's reputation in the community, that the plaintiff denied she had been involved in any wrongdoing and that the plaintiff was not provided adequate notice or sufficient opportunity to clear her name. Thus, the jury could have reasonably concluded that the plaintiff had been deprived of a liberty interest protected by the Constitution without out due process of law.

## IV.

The sheriff's final argument is that the state court's determination in the libel action brought by the plaintiff, *Hiram v. Rogers*, 257 N.W.2d 563 (Minn.1977), that no "actual malice" was shown on the part of the sheriff, compels a finding of good

faith in the present action. Although a number of differences are immediately discernible between the element of actual malice in a defamation suit and the defense of good faith in a civil rights action,[7] we find it unnecessary to decide that question for two reasons. First, this argument again raises *res judicata* or estoppel principles, which, as already discussed, were not raised at trial. Second, whereas the question of actual malice addressed in the defamation suit extended only to certain statements made by the sheriff, the issue of good faith in the present action involved, as stated in the jury instructions, "the lawfulness of plaintiff's employment termination, the circumstances surrounding plaintiff's termination of employment and the manner in which plaintiff's termination was carried out." Thus, the question of good faith in the present action was much broader than that of actual malice before the state court.

### V.

The plaintiff cross-appeals on the ground that the district court abused its discretion in conditioning the denial of the motion for new trial on the plaintiff's consent to remit $7,500 of the $15,000 award. Judge Larson found that "[t]he evidence on damages is so thin, so aleatory and scanty, especially in view of the plaintiff's admitted refusal to mitigate during the entire course of the first lawsuit, that the Court is reluctantly constrained to ask the plaintiff to remit the damages or proceed with a new trial." The plaintiff's argument is that the trial court, in so finding, merely substituted its judgment for that of the jury.

■ A trial court's discretion to order a new trial unless the plaintiff agrees to a remittitur of a stated amount, however, has

long been sanctioned, *see Dimick v. Schiedt*, 293 U.S. 474, 482–85, 55 S.Ct. 296, 299–300, 79 L.Ed. 603 (1935) and 11 Wright and Miller, *Federal Practice and Procedure*, Section 2815 at 100–103 (1973), and, as the plaintiff in this case consented to the remittitur, she may not appeal the propriety of that order. *Donovan v. Penn Shipping Co.*, 429 U.S. 648, 97 S.Ct. 835, 51 L.Ed.2d 112 (1977).

Accordingly, the judgment of the district court is affirmed in all respects.

---

7. The Minnesota courts have defined actual malice "as more than mere negligence and probably even more than highly unreasonable conduct." *Hiram v. Rogers*, 257 N.W.2d 563, 566 (Minn.1977). The burden of proving actual malice is upon the plaintiff and it must be proved with "convincing clarity." *Id.* Good faith in a § 1983 action, on the other hand, consists of " 'the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with

good-faith belief.' " *Wood v. Strickland*, 420 U.S. 308, 318, 95 S.Ct. 992, 999, 43 L.Ed.2d 214 (1975) (quoting *Sheuer v. Rhodes*, 416 U.S. 232, 247–48, 94 S.Ct. 1683, 1691–92, 40 L.Ed.2d 90 (1974). Like other affirmative defenses, the burden is on the defendant to prove each element of the defense of good faith to the jury's satisfaction. *Landrum v. Moats*, 576 F.2d 1320, 1329 (8th Cir.), *cert. denied*, 439 U.S. 912, 99 S.Ct. 282, 58 L.Ed.2d 258 (1978).