Terry J. HARRINGTON, Plaintiff,

v.

Matthew D. WILBER and
Pottawattamie County,
Iowa, Defendants.

Curtis W. McGhee, Jr., Plaintiff,

v.

Pottawattamie County, Iowa,
et al., Defendants.

Terry Harrington, individually and in
his capacity as the father of Nicole
Antoinette Harrington, Plaintiff,

v.

County of Pottawattamie, Iowa,
et al., Defendants.

Nos. 4:03–cv–90616, 4:05–cv–
00255, 4:05–cv–00178.

United States District Court,
S.D. Iowa,
Central Division.

Oct. 22, 2010.

David Stephen Baker, Fisher Patterson Sayler & Smith LLP, Overland Park, KS, Michael A. Sciortino, City of Council Bluffs Legal Dept., Robert M. Livingston, Kristopher K. Madsen, Stuart Tinley Law Firm LLP, Council Bluffs, IA, for Defendants.

Anne F. Danaher, Kansas City, KS, pro se.

Stephen Dillard Davis, Steve Davis Law PC, Oak Brook, IL, Thomas P. Frerichs, Frerichs Law Office, Waterloo, IA, William H. Jones, Canel Davis & King, Chicago, IL, Larissa A. McCalla, Gerry L. Spence, Spence Shockey & McCalla, J. Douglas McCalla, Mel C. Orchard, Spence Law Firm LLC, Jackson, WY, Alan O. Olson, Olson Law Office PC, Des Moines, IA, for Plaintiff.

## ORDER

**ROBERT W. PRATT, Chief Judge.**

Before the Court is a Joint Motion for Partial Summary Judgment, filed May 10, 2010, by the City of Council Bluffs (the "City"), Daniel Larsen ("Larsen"), and Lyle Brown ("Brown") (collectively the "City Defendants"). Clerk's No. 155. Curtis McGhee ("McGhee") filed a resistance to the Motion on June 3, 2010. Clerk's No. 164. Terry Harrington ("Harrington") filed a resistance to the Motion on June 14, 2010. Clerk's No. 178. Defendants filed a Reply on June 21, 2010. Clerk's No. 192. The matter is fully submitted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case has an extensive factual and procedural background that has been articulated repeatedly by the Court in past orders. In short summary, the present case is one of numerous cases pending in this Court that all arise from the investigation, prosecution, and conviction of Harrington and McGhee ("Plaintiffs") for the 1977 murder of John Schweer. In 2003, the Iowa Supreme Court vacated Harrington's first degree murder conviction for the failure of the prosecution to turn over exculpatory evidence. Harrington was released from custody after serving approximately twenty-five years in prison. Given that McGhee's conviction would likely be reversed on the same basis as Harrington's, Pottawattamie County struck a deal whereby McGhee agreed to enter an *Alford* plea to second degree murder, in exchange for a sentence of twenty-five years with credit for time served. Since McGhee had already spent nearly twenty-

six years in custody, he was released after entering his *Alford* plea on September 2, 2003.

On March 25, 2005 and on May 4, 2005, respectively, Harrington and McGhee filed lawsuits against law enforcement officers, prosecutors, and city and county entities, alleging various state law and civil rights violations. Case Nos. 4:05–cv–00178 (*Harrington v. County of Pottawattamie, et al.*); 4:05–cv–00255 (*McGhee v. Pottawattamie County, et al.*). In late December 2009, McGhee and Harrington ("Plaintiffs") entered into a Settlement Agreement with Pottawattamie County and the county prosecutors (the "County Defendants"), wherein Plaintiffs agreed to release all claims against the County Defendants in exchange for payments totaling $7,030,000 for Harrington, and $4,970,000 for McGhee. *See* Defs.' Statement of Material Facts ¶ 1; *see also* Def.'s App. Ex. 5.

Following Plaintiffs' settlement with the County Defendants, the City Defendants amended their answers to Plaintiffs' Complaints to assert setoff as an affirmative defense. *See* Defs.' Statement of Material Facts ¶ 2; *see also* Def.'s App. Exs. 3–4. Nonetheless, Plaintiffs' claims against the City Defendants remain pending. Specifically, Harrington still has the following claims pending against the City Defendants: Counts 1 and 2 (claims against the City Defendants for violation of 42 U.S.C. § 1983) and Count 3 (claims against the City Defendants for conspiracy under 42 U.S.C. § 1985(3)).[1] McGhee still has the following claims pending against the City Defendants: Counts 1 and 5 (claims against Larsen and Brown, in their individual capacities, for violation of 42 U.S.C.

---

1. On September 16, 2010, the Court dismissed Count 4 (claims against Larsen and Brown for intentional infliction of emotional distress), Count 5 (claims against Larsen and Brown for malicious prosecution), and Count

6 (claims against Defendants for Nicole Harrington's loss of parental consortium) for failure to comply with the applicable statute of limitations. Clerk's No. 214.

§ 1983); Count 15 (a claim against Larsen and Brown for conspiracy under 42 U.S.C. § 1985(3)); Count 18 (a claim against the City of Council Bluffs for violation of § 1983); and Count 19 (a claim against the City of Council Bluffs for indemnity).[2] *See* Case No. 4:05–cv–00255, Clerk's No. 1.

## II. STANDARD FOR SUMMARY JUDGMENT

The term "summary judgment" is something of a misnomer.[3] *See* Hornby, D. Brock, *Summary Judgment Without Illusions*, 13 Green Bag 2d 273 (Spring 2010). It "suggests a judicial process that is simple, abbreviated, and inexpensive," while in reality, the process is complicated, time-consuming, and expensive. *Id.* at 273, 281. The complexity of the process, however, reflects the "complexity of law and life." *Id.* at 281. "Since the constitutional right to jury trial is at stake," judges must engage in a "paper-intensive and often tedious" process to "assiduously avoid deciding disputed facts or inferences" in a quest to determine whether a record contains genuine factual disputes that necessitate a trial. *Id.* at 281–82. Despite the seeming inaptness of the name, and the desire for some in the plaintiffs' bar to be rid of it, the summary judgment process is well-accepted and appears "here to stay."[4] *Id.*

at 281. Indeed, "judges are duty-bound to resolve legal disputes, no matter how close the call." *Id.* at 287.

Federal Rule of Civil Procedure 56(b) provides that "[a] party against whom relief is sought may move at any time ... for summary judgment on all or part of the claim." "[S]ummary judgment is an extreme remedy, and one which is not to be granted unless the movant has established his right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances." *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 209 (8th Cir. 1976) (citing *Windsor v. Bethesda Gen. Hosp.*, 523 F.2d 891, 893 n. 5 (8th Cir. 1975)). The purpose of summary judgment is not "to cut litigants off from their right of trial by jury if they really have issues to try." *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962) (quoting *Sartor v. Ark. Natural Gas Corp.*, 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944)). Rather, it is designed to avoid "useless, expensive and time-consuming trials where there is actually no genuine, factual issue remaining to be tried." *Anderson v. Viking Pump Div., Houdaille Indus., Inc.*, 545

---

**2.** On September 16, 2010, the Court dismissed Counts 2 and 6 (claims against Larsen and Brown for malicious prosecution), Counts 3 and 7 (claims against Larsen and Brown for false arrest and imprisonment), and Counts 4 and 8 (claims against Larsen and Brown for intentional infliction of emotional distress) for failure to comply with the applicable statute of limitations. Clerk's No. 214.

**3.** Judge D. Brock Hornby, a District Court judge for the District of Maine, convincingly suggests that the name "summary judgment" should be changed to "motion for judgment without trial." Hornby, D. Brock, *Summary Judgment Without Illusions*, 13 Green Bag 2d 273, 284 (Spring 2010).

**4.** Judge Hornby notes that over seventy years of Supreme Court jurisprudence gives no hint that the summary judgment process is unconstitutional under the Seventh Amendment. *Id.* at 281 (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 336, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) and *Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944)). While he recognizes that not much can be done to reduce the complexity of the summary judgment process, he nonetheless makes a strong case for improvements in it, including, amongst other things, improved terminology and expectations and increased pre-summary judgment court involvement. *See id.* at 283–88.

F.2d 1127, 1129 (8th Cir.1976) (citing *Lyons v. Bd. of Educ.,* 523 F.2d 340, 347 (8th Cir.1975)).

Federal Rule of Civil Procedure 56(c) mandates the entry of summary judgment upon motion after there has been adequate time for discovery. Summary judgment can be entered against a party if that party fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is appropriately granted when the record, viewed in the light most favorable to the nonmoving party and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact, and that the moving party is therefore entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Harlston v. McDonnell Douglas Corp.,* 37 F.3d 379, 382 (8th Cir.1994). The Court does not weigh the evidence, nor does it make credibility determinations. The Court only determines whether there are any disputed issues and, if so, whether those issues are both genuine and material. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Wilson v. Myers,* 823 F.2d 253, 256 (8th Cir.1987) ("Summary judgment is not designed to weed out dubious claims, but to eliminate those claims with no basis in material fact.") (citing *Weight Watchers of Quebec, Ltd. v. Weight Watchers Int'l, Inc.,* 398 F.Supp. 1047, 1055 (E.D.N.Y.1975)).

In a summary judgment motion, the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact based on the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. If the moving party has carried its burden, the nonmoving party must then go beyond its original pleadings and designate specific facts showing that there remains a genuine issue of material fact that needs to be resolved by a trial. *See* Fed.R.Civ.P. 56(e)(2). This additional showing can be by affidavits, depositions, answers to interrogatories, or the admissions on file. *Id.; Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat a motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505. An issue is "genuine," if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *See id.* at 248, 106 S.Ct. 2505. "As to materiality, the substantive law will identify which facts are material.... Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

Courts do not treat summary judgment as if it were a paper trial. Therefore, a "district court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir.1994). In a motion for summary judgment, the job of a court is only to decide, based on the evidentiary record that accompanies the moving and resistance filings of the parties, whether there really is any material dispute of fact that still requires a trial. *See id.* (citing *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505 and 10 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2712 (2d ed. 1983)). It is the responsibility of the parties to provide the evidence necessary for this assessment. *Id.* at 921.

## III. LAW AND ANALYSIS

In the present Motion, the City Defendants contend that, as a matter of law, they are entitled to a pro tanto, or dollar-for-dollar, setoff against any potential judgment that may be awarded to Plaintiffs as compensation for their claims against the City Defendants. *See* Defs.' Br. at 2. Plaintiffs counter that the appropriate methodology for determining any setoff to which the City Defendants may be entitled is the proportionate share approach, whereby a jury apportions liability among both settling and non-settling defendants, and the non-settling defendant's obligation to pay an award is reduced by the percentage of liability apportioned to the settling defendant.

In determining the appropriate law to apply to the question of which measure of setoff is appropriate, the Court looks to 42 U.S.C. § 1988. *See Johnson v. Rogers,* 621 F.2d 300, 304 n. 6 (8th Cir.1980) (finding that § 1988 determines choice of law issues for actions brought under 42 U.S.C. § 1983). Section 1988(a) provides that the Court's jurisdiction over civil rights statutes "shall be exercised and enforced in conformity with the laws of the United States." Where, however, such law is deficient in some regard, § 1988 mandates that courts apply "the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil ... cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States." *Id.*

In *Johnson,* the Eighth Circuit determined that "federal law does not answer the question of the effect of a plaintiff's settlement with one defendant on an award of damages against a non-settling defendant." *Id.* Accordingly, this Court must first look to the law of the State of Iowa to determine what measure of setoff is warranted. *See id.* (finding that "state

law should serve as the federal rule of decision" on the issue). As noted, however, the Court need not apply Iowa law if doing so would be "inconsistent with the policies underlying a § 1983 cause of action." *Id.*

The City Defendants argue that Iowa law provides for pro tanto setoff on judgments against non-settling defendants. Defs.' Br. at 9 (citing *Jones v. City of Des Moines,* 355 N.W.2d 49, 52 (Iowa 1984), *Wadle v. Jones,* 312 N.W.2d 510, 512 (Iowa 1981), and *Greiner v. Hicks,* 231 Iowa 141, 300 N.W. 727, 731 (1941)). Defendants are correct that, for many years, Iowa employed a pro tanto setoff rule in most cases. In 1984, however, the Iowa legislature enacted Iowa Code chapter 668, entitled "Liability in Tort—Comparative Fault" (hereinafter "Chapter 668" or the "Comparative Fault Act"), which provides for a proportionate share approach to liability for joint tortfeasors. *See Slager v. HWA Corp.,* 435 N.W.2d 349, 350 (Iowa 1989). Sections 668.3(2)(a)-(b) provide that, in a trial "of a claim involving the fault of more than one party to the claim, including ... persons who have been released ... the court ... shall instruct the jury to answer special interrogatories" determining, amongst other things: 1) the amount of damages claimant is entitled to overall; and 2) the percentage of fault allocated to each defendant or person released from liability. Once the jury has made such determinations, the Court must reduce any award against the non-settling defendants by the proportion of liability assessed by the jury against the settling defendants. *See id.* §§ 668.3(4), 668.7. The term "fault," as used in Chapter 668 "means one or more acts or omissions that are in any measure negligent or reckless toward the person or property of the actor or others, or that subject a person to strict tort liability." Iowa Code § 668.1.

The City Defendants argue that the definition of "fault" in the Comparative Fault Act is applicable only in cases of negligence, and that it is inapplicable to cases involving intentional torts or constitutional injuries, such as those alleged in this case. Defs.' Reply Br. at 3. In support of their argument, the City Defendants cite *Tratchel v. Essex Group, Inc.*, 452 N.W.2d 171, 181 (Iowa 1990). *Id.* at 2–3. In *Tratchel,* the plaintiffs sued numerous defendants for, among other things, fraud for failing to disclose known facts about certain defects in gas furnaces. 452 N.W.2d at 173–74. After trial, the jury found in the plaintiffs' favor on their fraud claim, and allocated percentages of fault to both settling and non-settling defendants. *Id.* The Iowa Supreme Court held that comparative fault is "not a defense to fraud or to an intentional tort," and that if the Iowa legislature had intended Chapter 668 to cover fraud actions, "it could have easily included fraud in section 668.1." *Id.* at 180–81. Accordingly, the court determined that the "pro tanto rule remains viable in cases not affected by the enactment of chapter 668," and that the non-settling defendants were entitled to a pro tanto setoff for the amount plaintiffs recovered from the settling defendants. *Id.* at 181.

While the Court agrees that Plaintiffs' federal claims are based, in part, on the intentional tort theory of malicious prosecution, the Court nonetheless believes that Iowa courts would view Plaintiffs' § 1983 claims as arising from "acts or omissions" by the City and County Defendants that were, in some measure, "reckless toward the person or property" of the Plaintiffs. Indeed, as this Court previously stated:

> [I]t is evident from the extensive factual recitation supporting all counts of each Complaint that Plaintiffs seek remedies for not only malicious prosecution, but also for sundry constitutional and statutory injuries suffered as a result of their arrests, convictions, and long periods of incarceration. Indeed, even a cursory review of Plaintiffs' Complaints establishes that both allege facts sufficient to support their § 1983 claims. Paragraph 321 of Harrington's Complaint incorporates by reference all factual allegations contained in the preceding paragraphs, which generally assert that Defendants arrested Plaintiffs without probable cause and fabricated evidence against them. See Case No. 4:05–cv–178, Clerk's No. 1. It further contends that Defendants' actions violated Harrington's rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments in that they deprived Harrington of free association, due process, a fair trial, and equal protection. *Id.* Likewise, McGhee's Complaint incorporates by reference all prior factual assertions (generally the same as those in Harrington's Complaint), and contends that Defendants' actions deprived him of rights under the Fourth, Fifth, and Fourteenth Amendments. See Case No. 4:05–cv–255, Clerk's No. 1.

Clerk's No. 224 at 10–11. The Court is hard-pressed to envision a scenario whereby the conduct alleged to have been committed by Defendants could not qualify as "reckless" within the meaning of § 668. 1.[5]

---

5. While true that "[m]ere negligence does not rise to a constitutional violation" sufficient to support a § 1983 claim, *Johnson v. Hamilton,* 452 F.3d 967, 973 (8th Cir.2006), the same cannot be said of "reckless" conduct. *See Amrine v. Brooks,* 522 F.3d 823, 833 (8th Cir.2008) ("Where state officials 'have the opportunity to deliberate various alternatives prior to selecting a course of conduct, such action violates due process if it is done recklessly.'") (quoting *Wilson v. Lawrence County, Mo.,* 260 F.3d 946, 956 (8th Cir.2001)); *see also Daniels v. Williams,* 474 U.S. 327, 329–30, 106 S.Ct. 677, 88 L.Ed.2d 662 (1986) (finding that § 1983, "unlike its criminal counterpart ... contains no state-of-mind requirement independent of that necessary to state a violation of the underlying constitutional right").

Indeed, in *Kopsas by Kopsas v. Iowa Great Lakes Sanitary District of Dickinson County*, 407 N.W.2d 339, 339 (Iowa 1987), the Iowa Supreme Court explicitly stated that "the Iowa legislature intended [Chapter 668] to eliminate the pro tanto credit rule of *Glidden v. German*, 360 N.W.2d 716 (Iowa 1984), with the change applicable *to all tort actions* tried after July 1, 1984." (emphasis added); *see also Thomas v. Solberg*, 442 N.W.2d 73, 77 (Iowa 1989) ("[W]e have stated, without hesitation, that Iowa Code chapter 668 was intended to eliminate the pro tanto credit rule for tort actions tried after July 1, 1984," and finding that the proportionate credit rule applies "in all partial settlements of comparative fault cases, even though the settlement results in the plaintiff receiving more than the verdict").[6]

Even assuming, however, that Iowa Courts would apply the pro tanto setoff rule to Plaintiffs' claims in this case, the Court would nonetheless decline to apply it. The Eighth Circuit, in *Johnson*, identified the principal objectives of § 1983 as " 'compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law.' " *Johnson*, 621 F.2d at 304 n. 6. (quoting *Robertson v. Wegmann*, 436 U.S. 584, 590–91, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978)). The Court finds that the second articulated purpose, preventing abuses of power by those acting under color of state law, would be left largely unfulfilled if pro tanto setoff were the applicable approach. Indeed, were the jury to return a verdict of less than $12 million for Plaintiffs, a pro tanto setoff would require

the City Defendants to pay nothing, even if the jury found the City Defendants liable under § 1983. The Fifth Circuit has held that such a result "eliminate[s] the constitutional medication" that the deterrence purpose of § 1983 was designed to deliver, and thus, a pro tanto setoff rule was "impermissible under section 1988" because it conflicted with federal policies. *Dobson v. Camden*, 705 F.2d 759, 766 (5th Cir.1983) ("A rule that removes the burden of damages from the wrongdoer certainly conflicts with the policy of deterrence.").

The Southern District of New York, relying heavily on the Fifth Circuit's opinion in *Dobson*, rejected application of a New York pro tanto rule for precisely the same reason. *See Banks ex rel. Banks v. Yokemick*, 177 F.Supp.2d 239, 260 (S.D.N.Y. 2001). In *Banks*, the court found that the "driving force" of the pro tanto rule was to ensure victim compensation while, at the same time, preventing unjust enrichment for the victim at the expense of the tortfeasor. *Id.* at 260. Noting that a pro tanto rule would avoid unjust enrichment for the plaintiff only by "effectuat[ing] a windfall to the defendant," the court found the pro tanto approach incompatible with the deterrent effect of § 1983, which was intended to "favor fairness first for the interests of the injured party, rather than promoting an economic equilibrium that tips the benefit of the doubt and resulting equities toward the wrongdoer." *Id.* at 259 ("Consequently, in a particular application whose result would enable the most culpable official wrongdoers to escape liability altogether, a state statutory scheme whose

---

6. Moreover, the Court believes that an Iowa court considering the present matter would find the proportionate credit rule applicable. Iowa's Comparative Fault Act "closely parallels" the Uniform Comparative Fault Act, which employs the proportionate credit rule in its treatment of partial settlements. *See Thomas*, 442 N.W.2d at 76 ("The comment to

section 6 of the Uniform Act reinforces the notion that the proportionate credit rule is central to the Uniform Ac's treatment of partial settlements. Because Iowa Code section 668.7 is the counterpart of section 6, the comment is also relevant to the meaning of the Iowa provision.").

primary design is to achieve equity in apportioning liability among any and all joint tortfeasors, and thereby preventing windfalls for the injured persons, may be at odds with a § 1983 deterrent policy that is imbued with larger purpose."). The court further found that employing a rule that could potentially relieve a tortfeasor from any monetary penalty conflicted with the equitable principles of § 1983, noting that "the fairness in the defendant paying the victim 'rests not solely on the fact that the injured party deserves compensation, but also on the fact that the tortfeasor deserves to pay.'" *Id.* at 261 (quoting *Dobson,* 705 F.2d at 769).

The Court has given careful consideration to the cases cited by Defendant that reach a different result, i.e., cases that find a pro tanto approach compliant with the purposes of § 1983. *See* Defs.' Br. at 14–17 (citing federal cases that employ a pro tanto approach in § 1983 cases). Nonetheless, the Court finds the reasoning of *Dobson* and *Banks* compelling and adopts the reasoning and approach of those cases. The Court's conclusion in this regard is bolstered by the United States Supreme Court's decision in *McDermott, Inc. v. AmClyde,* 511 U.S. 202, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994). In *McDermott,* a nonsettling joint tortfeasor was held liable at trial, but claimed he was entitled to a setoff in an amount equal to the plaintiff's settlement with other defendants. 511 U.S. at 208–09, 114 S.Ct. 1461. The Court carefully analyzed three possible setoff mechanisms: 1) pro tanto credit with contribution; 2) pro tanto credit without contribution; and 3) proportionate share credit. *Id.* at 211–17, 114 S.Ct. 1461. The Court ultimately decided that the proportionate share approach was superior to either of the pro tanto approaches in encouraging settlement, furthering the interests of judicial economy, and in its consistency with the rule of proportionate fault. *Id.* at 211 (citing *United States v. Reliable Transfer,* 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975)). Though *McDermott* was decided in the context of an admiralty case, its discussion of setoff issues "did not involve issues or arcane concepts grounded on matters unique to maritime actions." *Banks,* 177 F.Supp.2d at 257. Thus, its reasoning "now constitutes an aspect of the 'laws of the United States' " to which a "district court can turn for guidance and precedent absent a squarely controlling state law, or confronted with a relevant state statute that ostensibly may apply but that, on closer scrutiny, in some material respect may be inconsistent with federal law." *Id.* (stating that *McDermott* represents "a prominent bough in the branching of federal common law directly bearing" on the setoff issue, and stating that "it must be considered as a significant reference point, if not the touchstone for whatever guidance it offers in informing this Court's inquiry concerning the applicable rule governing setoff and in fashioning a remedy in a § 1983 case"); *see also Bragger v. Trinity Capital Enter. Corp.,* 30 F.3d 14 (2d Cir.1994) (relying on *McDermott* to reject a pro tanto approach in a securities fraud context).

## IV. CONCLUSION

For the reasons stated herein, Defendants' Joint Motion for Partial Summary Judgment (Clerk's No. 155) is DENIED. The Court will employ a proportionate share approach to damages at trial in this matter.

IT IS SO ORDERED.